Joshua D. McMahon, Esq.
William Perry Pendley, Esq. (Wyo. Bar No. 20995)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
jmcmahon@mountainstateslegal.com

Attorneys for Defendants Marvin M. Brandt
Revocable Trust and Marvin M. Brandt, Trustee

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 06CV184-J |
| | ) | |
| Plaintiff, | ) | |
| | ) | **BRIEF IN OPPOSITION TO** |
| v. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| WYOMING AND COLORADO RAILROAD | ) | |
| COMPANY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. iii

ARGUMENT .................................................................................. 1

I.     THE UNITED STATES RETAINED NO REVERSIONARY RIGHT
UNDER THE ACT OF 1875 .......................................................... 1

    A.     Federal Case Law Supports the Trust's Reversionary Interest in the
Railroad Easement Granted by the Patent ......................................... 1

    B.     The Cases Cited by the United States Are Inapposite ....................... 5

II.     THE UNITED STATES HAS NO PROPERTY INTEREST IN THE
ABANDONED RAILROAD EASEMENT ................................................. 10

    A.     The Railroad Rights-of-Way Abandonment Act of 1922 Does
Not Create a Reversionary Interest in the Railroad Easement to
the United States ................................................................. 10

    B.     The Railroad Rights-of-Way Abandonment Act of 1922 Does Not
Apply in the Instant Case ..................................................... 13

    C.     The National Trails System Improvements Act of 1988 Does Not
Affect Title in the Instant Action ............................................ 14

III.     THIS COURT SHOULD QUIET TITLE IN FOREST SERVICE ROADS
512 AND 517 IN FAVOR OF THE TRUST ........................................... 15

    A.     The United States Ceased to Use a Segment of Forest Service
Road 512 for a Period of Five Years; Thus, the Easements
Traversed by Forest Service Roads 512 and 517 Terminated .......... 16

    B.     The October, 21, 1996, Decision Memorandum Terminated the
Easements ........................................................................ 18

    C.     The Easements Terminated From Non-Use ................................... 23

    D.     The United States Abandoned the Easements ............................... 29

        E.      The United States is Estopped From Claiming the Easements
Have Not Terminated ......................................................................... 32

CONCLUSION ................................................................................................... 35

CERTIFICATE OF SERVICE .............................................................................. 36

**<u>TABLE OF AUTHORITIES</u>**

**Cases** **<u>Page</u>**

*Adams v. United States*,
391 F.3d 1212 (Fed. Cir. 2004).................................................................................. 15

*Beres v. United States*,
64 Fed.Cl. 403 (2005) ................................................................................... *passim*

*Blendu v. United States*,
75 Fed.Cl. 543 (2007) .................................................................................................. 2

*City of Aberdeen v. Chicago and North Western Transp. Co.*,
602 F.Supp. 589 (D.C.S.D. 1984)............................................................................... 13

*Collins v. Finnell*,
29 P.3d 93 (Wyo. 2001)................................................................................................ 20

*D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*,
315 U.S. 447 (1942)...................................................................................................... 31

*Ellame Phillips Co. v. United States*,
77 Fed.Cl. 387 (2007) .................................................................................................. 2

*Great Northern v. United States*,
315 U.S. 262 (1942).................................................................................2, 8, 12, 13

*Hash v. United States*,
403 F.3d 1308 (Fed. Cir. 2005)............................................................................. 1, 3, 8

*Heckler v. Community Health Services of Crawford County, Inc.*,
467 U.S. 51 (1984)........................................................................................................ 32

*Idaho v. Oregon Short Line R.R. Co.*,
617 F.Supp. 207 (D.Idaho 1985) ........................................................................... 5, 7, 8

*Marshall v. Chicago and Northwestern Transportation Company*,
826 F.Supp. 1310 (D.Wyo. 1992), aff'd,
31 F.3d 1028 (10th Cir. 1994) ............................................................................... 5, 7

*Mueller v. Hoblyn*,
887 P.2d 500 (Wyo. 1994) ............................................................................................ 31

*N. Pac. Ry. Co. v. Townsend*,
190 U.S. 267 (1903) ....................................................................................................... 9

*Nicodemus v. Union Pacific Corporation*,
440 F.3d 1227 (10th Cir. 2006) ............................................................................... 9, 10

*Phillps Company v. Denver & Rio Grande Western Railroad Company*,
97 F.3d 1375 (10th Cir. 1996), cert. denied,
521 U.S. 1104 (1997) .................................................................................................. 5, 6

*Rio Grande Western Railway Co. v. Stringham*,
239 U.S. 44 (1915) ....................................................................................................... 12

*Seven Lakes Development Co., L.L.C. v. Maxson*,
144 P.3d 1239 (Wyo. 2006) ........................................................................................ 31

*Superior Oil Co. v. United States*,
353 F.2d 34 (9th Cir. 1965). ....................................................................................... 30

*Swendig v. Washington Water Power Co.*,
265 U.S. 322 (1924) ....................................................................................................... 3

*United States v. 434.00 Acres of Land*,
792 F.2d 1006 (11th Cir. 1986) .................................................................................. 22

*United States v. California*,
332 U.S. 19 (1947) ....................................................................................................... 21

*United States v. Standard Oil Co.*,
332 U.S. 301 (1947) ..................................................................................................... 31

*United States v. Union Pac. R.R. Co.*,
353 U.S. 112 (1957) ..................................................................................................... 12

*Watt v. Western Nuclear, Inc.*,
462 U.S. 36 (1983) ................................................................................................. 14–15

**Statutes**

Act of July 1, 1862,
ch. 120, § 3, 12 Stat. 489 ............................................................................... 9

Interstate Commerce Commission Termination Act,
PL 104-81, Dec. 29, 2995, 109 Stat. 801 ........................................................ 6

National Trail Systems Improvements Act of 1988,
16 U.S.C. § 1248(c) ............................................................................... *passim*

Federal Property and Administrative Services Act of 1949,
40 U.S.C. § 471, *et seq.*,
presently 40 U.S.C. § 101, *et seq.* ................................................................ 30

      40 U.S.C. § 101 .......................................................................... 30

      40 U.S.C. § 102 .......................................................................... 30

Abandoned Railroad Rights-of-Way Act of March 20, 1922,
43 U.S.C. § 912 ....................................................................................... *passim*

General Railroad Rights-of-Way Act of 1875,
43 U.S.C. §§ 934–939 ........................................................................... *passim*

**Other Authorities**

3 J. Pomeroy, Equity Jurisprudence § 805 (S. Symons ed. 1941) ......................... 33

Cong. Globe 42d Cong., 2d Sess. (1872) ............................................................. 12

Federal Rule Civil Procedure 56(d) ............................................................... 23, 29

H.R. Rep. No. 217, 67th Cong., 1st Sess. (June 23, 1921) ................................ 11–12

Restatement (Second) of Conflict of Laws § 226 (1971 & Cumm. Supp.) ........... 31

Restatement (Second) of Torts § 894(1)(1979) ................................................... 33

S. Rep. No. 388, 67th Cong., 2d Sess. (January 6, 1922) ................................ 11–12

Transportation System Operations Handbook WO Amendment 7709.59-91-1 ............ 20

Defendants/Counterclaimants Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee (collectively, the "Trust"), by and through their attorneys, hereby respectfully submit this brief in opposition to Plaintiff's Motion for Summary Judgment.

## ARGUMENT

I. **THE UNITED STATES RETAINED NO REVERSIONARY RIGHT UNDER THE ACT OF 1875.**

    A. **Federal Case Law Supports the Trust's Reversionary Interest in the Railroad Easement Granted by the Patent.**

The United States, in a footnote, recognizes the significant, recent, federal case law that is contrary to its claims and offers no explanation as to why this Court should not adhere to those decisions. United States' Brief in Support of Motion for Summary Judgment on Its Claims for a Judicial Declaration of Abandonment and an Order Quieting Title in Favor of the United States ("Pl. Br. Re: Railroad"), Doc. No. 145, at 15 n.8. In fact, this Court should rule consistent with these cases and issue summary judgment in favor of the Trust, holding that title to the abandoned railroad easement is in the Trust. The cases cited by the United States requires nothing less.

For example, in *Hash v. United States*, 403 F.3d 1308 (Fed.Cir. 2005), the United States sought to convert an abandoned railroad right-of-way to a recreational trail over the plaintiffs' property. *Id*. at 1311–1313. The "Category 1" plaintiffs, those where the railroad obtained its right-of-way over public lands before any transfer of the lands to the plaintiffs' predecessors-in-interest, alleged that "in accordance with the 1875 Act[1] and the terms of their land patents, they

_____

[1]  The General Railroad Rights-of-Way Act of 1875, 43 U.S.C. §§ 934–939.

1

were granted the underlying fee." *Id*. at 1313.[2]  In contrast, the United States alleged that "it

own[ed] the reversionary interest on abandonment of the right-of-way." *Id*.  In its decision, the

*Hash* court held:  "The weight of authority has resolved the question on the side of limiting the

railway's rights to a surface easement, over a century of legislation, litigation, and

jurisprudence." *Id*.  *Hash* then relied upon *Great Northern Railroad Co. v. United States*, 315

U.S. 262 (1942), for the holding that the railway "has only an easement in its rights of way

acquired under the Act of 1875." *Hash*, 403 F.3d at 1313 (citing *Great Northern*, 315 U.S. at

277).

     In overturning the district court, *Hash* looked to the language of the applicable statutes,

the legislative history, the patents, and other case law.  Specifically, *Hash* examined the Railroad

Rights-of-Way Abandonment Act of 1922, 43 U.S.C. § 912 ("Act of 1922"), and held that this

statute does not provide that the government somehow "tacitly intended to retain ownership of

the servient estate whenever land patents were granted to lands traversed by a previously granted

railroad right-of-way." *Hash*, 403 F.3d at 1318.  Instead, the court held,

> [43 U.S.C. § 912] requires the United States to convey any rights it <u>may</u> have, the
> patentee of the land traversed by the abandoned right-of-way; it does not say what
> rights the United States had after the land patent was granted.  Indeed, if the

---

[2] The "Category 1" property owners also filed suit in the Court of Federal Claims.  *Blendu v. United States*, 75 Fed.Cl. 543 (2007).  The Claims Court found the holding in *Hash*, 403 F.3d 1308, binding and granted the "Category 1" property owner's motion for summary judgment on liability.  *Blendu*, 75 Fed.Cl. at 549.  Furthermore, *Hash* and *Blendu* continue to be relied upon in Claims Court opinions.  *See Ellame Phillips Co. v. United States*, 77 Fed.Cl. 387, 395 (2007) (reiterating the holding of *Hash*, "The four pages of discussion . . . consider legislative history and precedent to determine whether the homestead grants contained any implied reservation of the lands underlying the rights-of-way.  The Federal Circuit concluded that they did not.").

>United States did have residual rights despite the patented land grant, then the statute required that the rights be conveyed to the private owner.

*Id*. (emphasis added). Additionally, *Hash* examined the patents and held that "absent an explicit reservation of an interest in land, such would not be implied." *Id*. at 1316 (citing *Swendig v. Washington Water Power Co.*, 265 U.S. 322 (1924)). Thus, applying the holding of *Hash* to the instant case, the Wyoming and Colorado Railroad Company, Inc. ("WYCO"), received only an easement in the Act of 1875 easement reserved in the Patent from its predecessor-in-interest and the United States reserved nothing for itself in the Patent in the 1875 Act easement. Therefore, when the United States issued the Patent to Marvin and Lula Brandt, the United States possessed no interest in the railroad right-of-way. As a result, neither 43 U.S.C. § 912 nor the National Trail Systems Improvements Act of 1988, 16 U.S.C. § 1248(c), applies.

Decided and published within a month of *Hash*, *Beres v. United States*, 64 Fed.Cl. 403 (2005), reached the same conclusion. In *Beres*, plaintiffs were fee owners of property burdened by an Act of 1875 railroad right-of-way that the United States converted to a recreational trail. *Beres*, 64 Fed.Cl. at 404. The claim by the United States in *Beres* appears to be nearly identical to the claim in the instant action:

>[T]hat when the United States granted the [railway company] a right-of-way under the 1875 Act, the United States retained a reversionary interest in the land underlying the right-of-way, such that when [the railway company] stopped using the right-of-way for railroad purposes, the reversionary interest entitled the United States to permit the railway right-of-way to be converted to a trail.

*Id*. at 406. In response, and similar to the instant action, the plaintiffs alleged that the Act of 1875 granted an easement to the railroad company and when the railroad company ceased use of

the right-of-way for railroad purposes, the property was unburdened by the easement, and the United States retained no reversionary interest. *Id*. at 407.[3]

In its opinion, which, to date, is the most detailed to examine the relationship between Act of 1875 railroad easements, 43 U.S.C. § 912, and 16 U.S.C. § 1248(c), the *Beres* court held as follows:  1) The United States retained no reversionary interest in Act of 1875 railroad rights-of-way,  *Beres*, 64 Fed.Cl. at 416 ("The concept of a reversionary right in the future is not included or even intimated in the 1875 Act."); 2) the patent must be examined to determine if the United States intended to retain an interest in the Act of 1875 railroad right-of-way,  *Id*. at 417; 3) an important shift in congressional policy occurred in 1871; thereafter, "outright grants of public lands were discontinued, and Congress began a policy of making individual, specialized right-of-way grants to specific railroad companies,"  *Id*. at 418; 4) 43 U.S.C. § 912 "was restating the obvious conclusion regarding the language of the 1875 Act and other right-of-way statutes that, in the absence of additional language, a right-of-way through public lands allowed for a limited use and did not reserve any fee type interests or reversionary rights as part of that right-of-way,"  *Beres*, 64 Fed.Cl. at 419; 5) "[16 U.S.C. § 1248(c)] should not be applied to the 1875 Act which, it appears, intentionally omitted any words to create a reversionary right in the United States in grants of railroad rights of way, especially in light of the clarifying legislation in the 1922 Act, which specifically addressed the issue,"  *Beres*, 64 Fed.Cl. at 420; and 6) "[I]n

---

[3] This was the only issue briefed in the summary judgment motion in *Beres*.  *Beres*, 64 Fed.Cl. at 407.  Depending on the outcome, the plaintiffs could have then proceeded with their takings claim.  *Id*.

*Great Northern*[, the] United States Supreme Court specifically overturned the *Stringham* line of cases, which had previously described the railroads' interest as a 'limited fee,'" *Id*. (internal citation omitted). In light of all these holdings, the *Beres* court held that the United States held no reversionary interest in the Act of 1875 railroad right-of-way. *Id*. at 428. Therefore, applying the law established in *Beres* to the instant action, the United States retained no reversionary interest in WYCO's Act of 1875 railroad easement under the Act of 1875, 43 U.S.C. § 912, 16 U.S.C. § 1248(c), or the clear language of the Patent.

Of note in *Beres*, the court considered the holdings in *Marshall v. Chicago and Northwestern Transportation Company*, 826 F.Supp. 1310 (D.Wyo. 1992), *aff'd*, 31 F.3d 1028 (10th Cir. 1994), and *Idaho v. Oregon Short Line R.R. Co.*, 617 F.Supp. 207 (D.Idaho 1985), and found them unpersuasive. *Beres*, 64 Fed.Cl. at 424. In particular, the *Beres* Court decided not to follow those decisions because the cases failed to analyze the language of the Act of 1875 or the intervening patents issued by the United States "to determine the nature of the land interest before and after a railroad right-of-way grant." *Id*. at 425. Furthermore, *Marshall* and *Oregon Short Line* "relied only on language or legislative history or later congressional enactments and other court opinions to explain and interpret the words and effect of the 1875 Act." *Id*. Thus, pursuant to *Beres* and *Hash*, summary judgment must be granted for the Trust, quieting title in it to the abandoned railroad right-of-way.

**B.    The Cases Cited by the United States Are Inapposite.**

In its brief, the United States argues that *Phillps Company v. Denver & Rio Grande Western Railroad Company*, 97 F.3d 1375 (10th Cir. 1996), *cert. denied*, 521 U.S. 1104 (1997),

held that "once Section 1248(c) had been enacted, the reversionary interest [in the railroad right-of-way] was held by the United States and not adjacent landowners." Pl. Br. Re: Railroad at 10. The United States' reliance on this case is misplaced. In *Phillips*, plaintiff commenced an action under 43 U.S.C. § 912 to quiet title in a right-of-way underlying an adjacent rail line. *Phillips*, 97 F.3d at 1376. Specifically, the plaintiff was seeking an abandonment determination from the Interstate Commerce Commission ("ICC") with an effective date of October 3, 1988.[4] *Id.* The issue on appeal was "whether authorization from the [ICC] to abandon a railroad line . . . is a prerequisite to a court's determination that the railroad has abandoned the right of way for purposes of 43 U.S.C. § 912." *Id.* ("[P]laintiff . . . seeks a retroactive determination that the right of way reverted to it prior to the effective date of § 1248." *Id*. at 1377–1378.)

In the instant action, the Trust is not asking that the Surface Transportation Board ("STB") backdate a finding of abandonment. Instead, the Trust alleges that 16 U.S.C. § 1248(c) does not effect title in the instant action because, as of the effective date of the statute, the United States had no interest in the railroad easement. Brief in Support of Motion for Summary Judgment Filed by Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee ("Trust Br."), Doc. No. 140, at 16–19; *Beres*, 64 Fed.Cl. at 420. Therefore, while the *Phillips* court may have been of the opinion that, "once Section 1248(c) had been enacted, the reversionary interest was held by the United States," Pl. Br. Re: Railroad at 10, that is inapposite because, in the

---

[4] The Interstate Commerce Commission is now the Surface Transportation Board. Interstate Commerce Commission Termination Act, PL 104-88, Dec. 29, 1995, 109 Stat. 803.

instant case, once 16 U.S.C. § 1248(c) was enacted, the United States possessed no interest in the railroad easement in which it could have possessed a reversion! *Beres*, 64 Fed.Cl. at 420.

The United States then turns its attention to *Marshall v. Chicago and Northwestern Transportation Company*,[5] for the proposition that "[43 U.S.C. § 912] applie[s] to 1875 Act rights-of-way and [the court] indicated that the United States retain[s] an interest in those rights-of-way." Pl. Br. Re: Railroad at 11. However, *Marshall* is not controlling in the instant action.

To the extent *Marshall* holds that 43 U.S.C. § 912 applies to 1875 Act easements and that the United States retained some interest in 1875 Act easements, it may not be relied upon as precedent.[6] The *Marshall* court failed to analyze the language of the Act of 1875 and the intervening land patent from the United States to determine the nature of the property interest before and after a railroad right-of-way grant. Instead, *Marshall* relied only on language of other court opinions to explain and interpret the words and effect of the Act of 1875. *See Marshall*, 31 F.3d at 1032 (citing *Idaho v. Oregon Short Line R.R. Co.*, 617 F.Supp. 207 (D.Idaho 1985), for its holding).

Additionally, *Marshall* relied upon the opinion in *Oregon Short Line* that held, "In enacting [43 U.S.C. § 912], Congress clearly felt that it had some retained interest in the railroad rights-of-way." Given the progression from the Act of 1875 Act to *Stringham* and Congress's subsequent enactment of 43 U.S.C. § 912 due to the important shift in congressional policy, the

---

[5] The *Marshall* Court does not cite to, nor rely upon, 16 U.S.C. § 1248(c).

[6] The decision in *Marshall* was analyzed and explicitly rejected in *Beres*, 64 Fed.Cl. 403 (2005).

*Oregon Short Line* Court was clearly wrong:  Congress did not intend to reserve an interest in 1875 railroad easements.  Further, the *Oregon Short Line* Court relied upon *Stringham* for the proposition that the United States retained some interest in Act of 1875 railroad easements. *Stringham*, however, was overruled by *Great Northern*, and, after *Great Northern*, the concept of the "limited fee" no longer applied to Act of 1875 railroad rights-of-way.  *Great Northern*, 315 U.S. at 271 (holding "The Act of [1875] . . . clearly grants only an easement, and not a fee."). Therefore, to the extent the *Oregon Short Line* Court relied upon *Stringham*, it may not be followed.  Instead, this Court should follow the reasoning in *Beres* and *Hash* and hold that, given the facts of this case, the United States retained no interest in the railroad easement reserved in the Trust's Patent.  *Beres*, 64 Fed.Cl. 403 (2005); *Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005).

Further, 43 U.S.C. § 912 doe not apply to Act of 1875 rights-of-way.  Once a railroad ceases use of an 1875 railroad easement, the landowners' property becomes unburdened of that easement.  As of the date the United States patents the underlying property, it retains no interest in the 1875 railroad easement unless it expressly reserves an interest in the patent.[7]

---

[7]This Court could grant the Trust's requested relief without overturning its analysis in *Marshall* because 43 U.S.C. § 912 has no effect in the instant case.  The Act of 1875 granted only an easement with no reversion, implied or express, reserved in the United States.  *See Great Northern*, 315 U.S. at 271 (holding "the Act of March 3, 1875 . . . clearly grants only an easement, and not a fee . . ..  [T]he right granted is one of use and occupancy only.").  Additionally, in the instant case, the United States did not reserve explicitly in the Patent any interest in the railroad right-of-way.  Statement of Facts Filed by Defendants Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee ("DSOF") at Ex. 1.  Because the United States reserved no interest in the Patent and because the Act of 1875 granted only an easement without

Finally, the United States relies upon *Nicodemus v. Union Pacific Corporation*, 440 F.3d 1227 (10th Cir. 2006), for its argument that, "by virtue of 16 U.S.C. § 1248(c), abandoned railroad rights-of-way which formerly reverted to landowners under 43 U.S.C. § 912 now 'revert back to the United States, not adjacent landowners.'" Pl. Br. Re: Railroad at 14 (citation omitted in original). However, the United States' reliance upon *Nicodemus* is misplaced. The issue in *Nicodemus* was purely jurisdictional; the court provided no holding affecting the property interests of either party. *Nicodemus*, 440 F.3d at 1237. In fact, ten of the eleven pages of the opinion deal solely with federal question jurisdiction; only in a footnote and on the eleventh page does the court even mention federal land grants. *Id.* at 1227–1237 n.9.

Furthermore, the portions of the *Nicodemus* opinion cited by the United States make it obvious that *Nicodemus* is not controlling in the instant action. Pl. Br. Re: Railroad at 14. For example, the court describes the federal interest as one arising under the Act of July 1, 1862, ch. 120, § 3, 12 Stat. 489 ("Act of 1862"), and cites *Townsend* for the proposition that 43 U.S.C. § 912 intended to grant the United States a right of reverter in Act of 1862 railroad rights-of-way. *Nicodemus*, 440 F.3d at 1236, 1236 n.9 (citing *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267 (1903)). *Townsend*, however, was limited specifically to railroad easements granted under the Act of 1862 and in no way affects title to railroad rights-of-way granted under the Act of 1875. *Townsend*, 190 U.S. at 271; Trust's Br. at 3–4. In contrast, this Court is not being asked to determine whether 43 U.S.C. § 912 may have intended to grant the United States a right of

a reversion, the United States no longer had any interest in the railroad right-of-way when it issued the Patent to Marvin and Lula Brandt. *Id.*

reverter in Act of 1862 railroad rights-of-way. Therefore, in dicta, *Nicodemus*, at most, provides

that 16 U.S.C. § 1248(c) applies to abandoned Act of 1862 railroad rights-of-way that reverted to

landowners under 43 U.S.C. § 912. *Nicodemus*, 440 F.3d at 1236. This is clearly inapposite to

the instant action, which involves only a railroad easement granted under the Act of 1875. Thus,

contrary to the argument of the United States, there is no Tenth Circuit case law controlling its

claim to the reversionary rights in the Trust's Property. Pl. Br. Re: Railroad at 10–15.

## II.    THE UNITED STATES HAS NO PROPERTY INTEREST IN THE ABANDONED RAILROAD EASEMENT.

### A.    The Railroad Rights-of-Way Abandonment Act of 1922 Does Not Create a Reversionary Interest in the Railroad Easement to the United States.

As previously demonstrated, the Act of 1922 granted no property interest to the United

States in the instant action. Trust Br. at 7–16. The United States, however, argues that, by

enacting the Act of 1922, "Congress expressed its understanding that the 1875 Act retained a

reversionary interest in the rights-of-way in the United States." Pl. Br. Re: Railroad at 8. This

is not true. The Act of 1922, in pertinent part, provides:

> Whenever public lands of the United States have been granted to any railroad
> company for use as a right-of-way for its railroad . . . and use and occupancy of
> said lands for such purposes . . . shall hereafter cease, . . . by abandonment by said
> railroad company declared or decreed by a court of competent jurisdiction . . .,
> then and thereupon <u>all right, title, interest, and estate of the United States in said
> lands shall, . . . be transferred to and vested in any person, firm, or corporation,
> assigns, or successors in title and interest to whom or to which title of the United
> States may have been or may be granted</u>.

43 U.S.C. § 912 (emphasis added). Nowhere in this language can the United States find support

for its argument. Pl. Br. Re: Railroad at 8. In fact, the Act of 1922 grants nothing to the United

States; instead, the language is clear on its face:  once the railroad right-of-way is abandoned, any title the United States may have had is transferred to the current owner of the underlying estate.  43 U.S.C. § 912; *see Beres*, 64 Fed.Cl. at 419 (holding the Act of 1922 did not grant or reserve a reversionary right in favor of the United States as part of the right-of-way.).

In a footnote, the United States attempts to support its argument by alleging that a Senate Report "explain[s] how [43 U.S.C. § 912] operates on 1875 Act rights-of-way."  Pl. Br. Re: Railroad at 7 n.5.  However, neither this Senate Report, nor the original House Report from which the Senate Report takes its language verbatim, supports the United States' argument; in fact, these Reports support the opposite conclusion and provide that the Act of 1875 did not intend to grant any property interest to the United States in abandoned railroad rights-of-way. H.R. Rep. No. 217, 67th Cong., 1st Sess. (June 23, 1921) at 1–2 (emphasis added); S. Rep. No. 388, 67th Cong., 2d Sess. (January 6, 1922) at 1–2 (providing the same verbatim).  The House Report provides:

> The object of this bill is to provide for disposition of lands embraced in forfeited or abandoned railroad rights of way on what was originally public lands. . . . Under the decision of the courts railroad companies receiving such grants take a qualified fee with an implied condition of reverter in the event the companies cease to use the lands for the purposes for which they were granted.  Upon abandonment or forfeiture, therefore, of any portions of such right of way the land reverts to and becomes the property of the United States.
>
> It is, however, a fact that in making conveyances of subdivisions traversed by such rights of way the United States issues patents for the full area of the tracts or legal subdivisions, making no diminution by reason of the prior grant of the right of way.
>
> It seemed to the committee that such abandoned or forfeited strips are of little or no value to the Government and that in case of lands in the rural communities

> they ought in justice to become the property of the person to whom the whole of the legal subdivision had been granted or his successor in interest. Granting such relief in reality gives him only the land covered by the original patent.

H.R. Rep. No. 217 at 1–2 (emphasis added); S. Rep. No. 388 at 1–2.

Additionally, as the House and Senate Reports make obvious, 43 U.S.C. § 912 was passed, in part, as a reaction to *Rio Grande Western Railway Co. v. Stringham*, 239 U.S. 44 (1915). In *Stringham*, the Supreme Court interpreted the Act of 1875 and held that the United States retained a "limited fee" in railroad rights-of-way.[8] *Id*. at 47. Congress, disagreeing with the "limited fee" concept, passed 43 U.S.C. § 912. H.R. Rep. No. 217 at 1–2; S. Rep. No. 388 at 1–2. Therefore, this statute "reconfirmed the absence of . . . a reversionary interest in the United States and the congressional intent . . . that land should be reserved for homesteaders and for educational purposes." *Beres*, 64 Fed.Cl. at 428. Thus, 43 U.S.C. § 912 does not create a reversionary interest in railroad rights-of-way in the United States.

---

[8] The Supreme Court later overturned its opinion in *Stringham*, holding instead that the Act of 1875 grants an easement to railroads for railroad purposes. *Great Northern v. United States*, 315 U.S. 262, 277 (1942). In reaching this holding, the *Great Northern* Court had available the history surrounding federal railway grants, policies and decisions issued by the United States Department of the Interior, and the legislative history behind the Act of 1875; information not made available to the *Stringham* Court. In particular, the *Great Northern* Court found the shift in congressional policy persuasive. *Great Northern*, 315 U.S. at 273. Specifically, prior to 1871, congressional policy favored the broad, unfettered development of the Western States, and, as a result, railroads were granted fee to large tracts of the public domain. *Id*. However, after 1871, this policy changed and Congress passed subsequent legislation that limited federal railway rights-of-way to easements for railroad purposes. *Id*. at 273–275; *see United States v. Union Pac. R.R. Co.*, 353 U.S. 112, 119 (1957); Cong. Globe 42d Cong., 2d Sess., at 1585 (1872).

**B.    The Railroad Rights-of-Way Abandonment Act of 1922 Does Not Apply in the Instant Case.**

As previously demonstrated, the Act of 1922 does not apply in the instant case.  Trust Br. at 13–16.  The United States now argues that 43 U.S.C. § 912 applies to Act of 1875 railroad rights-of-way.  Pl. Br. Re:  Railroad at 7–8.  However, after *Great Northern v. United States*, 315 U.S. 262 (1942), 43 U.S.C. § 912 no longer applied to railroad easements granted under the Act of 1875.  *City of Aberdeen v. Chicago and North Western Transp. Co.*, 602 F.Supp. 589, 593 (D.C.S.D. 1984).  As the *City of Aberdeen* court explained:

> As a mere easement, once a railroad ceases using for railroad purposes a right-of-way granted after 1871, it disappears and the underlying landowner has the use of property he already owns.  As of the date the United States patents the underlying land, it has no right, title, interest or estate to be transferred under Section 912. The patentee acquires fee title to the entire tract subject to the railroad's easement. This analysis finds support in the Tenth Circuit Court of Appeals' *Wyoming v. Udall*, 379 F.2d 635 (10th Cir.1967) decision.  Confronted with a controversy over oil deposits underlying a pre-1871 right-of-way grant traversing Wyoming school lands, the court stated:  "We realize that in Great Northern, the court completely disregarded the Abandoned Railroad Right-Of-Way Act and that after *Great Northern*, such act applied only to pre-1871 grants."  *Id*. at 639.

*City of Aberdeen*, 602 F.Supp. at 593 (emphasis added).

In the instant case, the Act of 1875 only granted the railroad an easement.  Trust Br. at 7–9; Statement of Facts Filed by Defendants Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee ("DSOF"), Doc. No. 141, at Ex. 1; *see Beres*, 64 Fed.Cl. at 422.  Thus, once the railroad ceases use of its railroad easement for railroad purposes, the easement terminates and the underlying fee owner's land is unburdened of that easement.  Therefore, because the Trust acquired fee title to Fox Park subject to the railroad easement, once WYCO abandoned the

easement, the Trust's property became unburdened of that easement. *City of Aberdeen*, 602 F.Supp. at 593. Therefore, the Act of 1922 does not apply.

**C.    The National Trails System Improvements Act of 1988 Does Not Affect Title in the Instant Action.**

As previously demonstrated, 16 U.S.C. § 1248(c) does not affect title to the railroad right-of-way in the instant case. Trust Br. at 16–19. However, the United States argues: "In 1988, Congress effectively repealed those portions of the 1922 Act which allowed the government to relinquish its interest in these rights-of-way to adjacent landowners, instead requiring that the reversionary rights remain in the United States upon their abandonment or forfeiture:" Pl. Br. Re: Railroad at 8. The United States' argument appears to be that the National Trails System Improvements Act of 1988 applies in the instant case to create, retroactively, a reversionary interest and vest that interest in the United States. This argument must fail. The National Trails System Improvements Act provides:

> Commencing upon October 4, 1988, any and all right, title, interest and estate of the United States in all rights-of-way of the type described in section 912 of Title 43, shall remain in the United States upon the abandonment or forfeiture of such rights-of-way.

16 U.S.C. § 1248(c) (emphasis added). This statute is inapplicable on its face because, as of October 4, 1988, the United States had no right, title, or interest in WYCO's railroad easement. Trust Br. at 16–19; DSOF at Ex. 1. Therefore, the United States' reliance on the National Trails System Improvements Act is misplaced because of the Act's clear date limitation.

The general rule is that "'nothing passes except what is conveyed in clear language [of the land grant].'" Pl. Br. Re: Railroad at 9 (quoting *Watt v. Western Nuclear, Inc.*, 462 U.S. 36,

59 (1983) (internal citation omitted)).  However, "the United States Supreme Court recognizes the sanctity of land transfers, and has expressed reluctance to interfere with land rights <u>in which no reservations were present when conferred</u>."  *Beres*, 64 Fed.Cl. at 417 (emphasis added). Therefore, the language of the Patent is determinative of the limits or reservations present in the Patent, if any.  In the instant case, the United States failed to reserve a reversionary interest in the railroad easement; thus, when 16 U.S.C. § 1248(c) was passed in 1988, the United States no longer held any rights in the railroad easement.  Trust Br. at 10–13; DSOF at Ex. 1.

Furthermore, the National Trails System Improvements Act cannot have a retroactive effect on this transfer of land rights because that Act "intentionally omitted any words to create a reversionary right in the United States in grants of railroad rights of way, especially in light of the clarifying legislation in the 1922 Act, which specifically addressed the issue."  *Beres*, 64 Fed.Cl. at 420.  "A fundamental precept of our property ownership system and system of laws includes certainty of ownership upon purchase. . . .  The average citizen, the reasonable man, expects that a contract to transfer land . . . will not be retroactively changed many years after the land transfer."  *Id*. at 427.  Thus, the National Trails System Improvements Act cannot affect title in the instant action.  *Id*. at 420.  Should the United States now decide to take the Trust's Property for public purposes, the Fifth Amendment to the United States Constitution requires "just compensation."  *See Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004).

# III. THIS COURT SHOULD QUIET TITLE IN FOREST SERVICE ROADS 512 AND 517 IN FAVOR OF THE TRUST.

## A. The United States Ceased to Use a Segment of Forest Service Road 512 For a Period of Five Years; Thus, the Easements Traversed by Forest Service Roads 512 and 517 Terminated.

As previously demonstrated, the United States triggered the termination clauses in the Patent; thus, the easements reserved for Forest Service Roads 512 and 517 terminated. Trust Br. at 19–20. The Patent contains the following provisions:

> RESERVING TO the United States, and its assigns, a right-of-way for the existing Platte Access Road No. 512 over and across Tract No. 37, in Sections 21 and 22, T. 13 N., R. 78 W., 6th P.M.; [metes and bounds omitted] having a total length of approximately 1,825 feet and containing 3.30 acres, more or less.
>
> * * *
>
> RESERVING TO the United States, and its assigns, a right-of-way for the existing Dry Park Road No. 517, over and across Tract 37, in Sections 21 and 22, T. 13 N., R. 78 W., 6th P.M.; [metes and bounds omitted] traversing in a southwesterly direction approximately 440 feet to a point representing the terminus of road No. 517 and its junction with road No. 512, [metes and bounds omitted], approximately 420 feet containing 0.71 acres, more or less.
>
> <u>Provided, that if for a period of five years, the United States, or its assigns, shall cease to use the above roads, or any segment thereof, for the purposes reserved, or if at any time the Regional Forester determines that the roads, or any segment thereof, is no longer needed for the purposes reserved, the easement traversed thereby shall terminate.</u> In the event of such nonuse or such determination by the Regional Forester, the Regional Forester shall furnish to the patentees or, their heirs or assigns, a statement in recordable form evidencing termination.

DSOF at Ex. 1 (emphasis added). In its brief, the United States correctly cites the language of the Patent, including the termination provisions. Brief in Support of the United States' Motion for Summary Judgment on the Second Counterclaim of Defendants/Counterclaimants Marvin M.

Brandt Revocable Trust and Marvin M. Brandt Trustee ("Pl. Br. Re:  Road"), Doc. No. 143, at 3. But, in its attempt to explain the "two explicit conditions whereby the road easement will terminate," the United States overlooks that termination of the easements can be accomplished with actions limited to "any segment thereof."  Pl. Br. Re:  Road at 3; DSOF at Exhibit 1.  It is that phrase, "any segment thereof," however, that mandates summary judgment in favor of the Trust thereby quieting title to the portions of Forest Service Road ("FSR") 512 and FSR 517 that exist on the Trust's Property.

In its brief, the United States does not dispute the existence of the October 21, 1996 Decision Memorandum ("1996 Decision Memo") in which "the District Ranger decided to proceed with the re-routing of traffic with respect to the .2 mile section of [Forest Development Road] 512 to alleviate safety and health concerns, and also to relinquish the reserved right-of-way on that section."  Pl. Br. Re:  Road at 6; DSOF at Ex. 2.  Furthermore, the United States does not dispute that the 1996 Decision Memo was acted upon with respect to a section of FSR 512 that lies on the Trust's property.  Pl. Br. Re:  Road at 6; Ex. 2 ¶ 8.  Therefore, the following are deemed true:

> 1.  The Patent provides that "if for a period of five years, the United States . . . shall cease to use the above roads, or any segment thereof, for the purposes reserved . . . the easement traversed thereby shall terminate."  Pl. Br. Re:  Road at 5; DSOF at Ex. 1 (emphasis added).
>
> 2.  In 1996, the United States issued a Decision Memorandum "closing and obliterating" a portion of FSR 512 that lies on the Trust's property.  Pl. Br. Re: Road at 6, Ex. 2 ¶ 7; DSOF at Ex. 2 ¶ 7.
>
> 3.  In 1996, the United States "clos[ed] and obliterate[ed]" a portion of FSR 512 that lies on the Trust's property.  Pl. Br. Re:  Road at 6, Ex. 2 ¶ 8; DSOF at Ex. 2.

4.  The United States' has failed to use the portion of FSR 512 that it "clos[ed] and obliterat[ed]," for any reason, since at least 1996.  Pl. Br. Re:  Road at 6; DSOF at Ex. 2.

5.  It has been more than five years since the United States has failed to use the portion of FSR 512 that it "clos[ed] and obliterat[ed]."  Pl. Br. Re:  Road at 6; DSOF at Ex. 2.

These uncontested facts demonstrate that the condition in the Patent terminating the easements has been triggered:  the United States has ceased to use a segment of FSR 512 for a period of five years; thus, the easements have terminated.  DSOF at Ex. 2.  Therefore, pursuant to the clear language of the Patent, by failing to use even a segment of one of the reserved easements for the five year period, not only has the easement for FSR 512 been terminated, but so has the easement for FSR 517.  *Id.*  Given these uncontested facts, summary judgment must be granted to the Trust and title must be quieted in the Trust to the portions of FSR 512 and FSR 517 that cross its Property.

### B.  The October, 21, 1996, Decision Memorandum Terminated the Easements.

As previously demonstrated, the 1996 Decision Memo satisfied a condition of termination in the Patent for FSR 512 and FSR 517.  Trust Br. at 20–22.  The United States, however, argues that the 1996 Decision Memo "did not terminate the right-of-way," instead, because the District Ranger, Michael Sanders, signed the 1996 Decision Memo, the action was "only a recommendation–one that was not acted upon by the person above him (the Regional Forester) with the authority to do so."  Pl. Br. Re:  Road at 7.  This argument must fail.

The Trust agrees that the District Ranger, Michael Sanders, signed the 1996 Decision Memo.  DSOF at Ex. 2.  However, it defies logic for the United States to allege that the 1996 Decision Memo was not acted upon:  it was adopted and implemented immediately.  DSOF Ex. 2; Ex. 3 ¶ 14.  In fact, in immediately closing the portion of FSR 512 that crossed the Trust's Property in accordance with the 1996 Decision Memo, the Forest Service erected barriers, obliterated the road surface, graded the land, and planted native grasses.  *Id*. Ex. 3 ¶ 14; Ex. C; Ex. D.  Additionally, at the request of the Forest Service, Mr. Brandt installed a gate at the south end of former FSR 512 where that road intersects the Trust's Property.  Ex. 3 ¶ 18.  Currently, no road exists on that portion of FSR 512 that was obliterated and the area currently blends in with the Trust's surrounding Property.  *Id.* Ex. C; Ex. D.

Furthermore, assuming, *arguendo*, that the District Ranger did not have the authority to terminate the right-of-way,[9] Pl. Br. Re:  Road at 7, the Forest Supervisor, Jerry E. Schmidt, acted specifically upon the 1996 Decision Memo when he issued the 1997 Travel Management Order, the purpose of which was "to allow closure, abandonment, removal [of] the road surface on a portion of FDR 512, and rerouting of traffic onto FDR 512.C."  Pl. Br. Re:  Road at Attachment C (emphasis added).  The language of the 1997 Travel Management Order can be understood only when read in context with the 1996 Decision Memo.  In fact, the 1997 Travel Management

_____

[9] If the District Ranger, Michael Sanders, acted without authority, one would assume he would have been reprimanded by his superiors.  Instead, not only was Mr. Sanders not reprimanded, but he has successfully progressed through the ranks of the Forest Service; eventually he was promoted to Forest Supervisor of the Ozark-St. Francis National Forest.  *See* http://www.fs.fed.us/oonf/ozark/projects/planning/documents/2005_final.pdf (last visited Nov. 1, 2007).

Order could not exist but for the 1996 Decision Memo because the 1997 order incorporates the

1996 Memo.[10]  Thus, the 1996 Decision Memo, as ratified by the Forest Supervisor's 1997

Travel Management Order, satisfies one of the conditions in the Patent terminating the right-of-

way; specifically, it was "determine[d] that the road[], or any segment thereof, [was] no longer

needed for the purposes reserved."  Thus, pursuant to the language of the Patent, the easement

terminated.  DSOF at Ex. 1.

The United States also argues that "The Regional Forester has the sole authority to

[terminate] the right-of-way."  Pl. Br. Re:  Road at 8.  However, the United States fails to cite

any authority in support of that proposition.  While it is true that the Patent specifically provides

that the determination to terminate the right-of-way must come from the Regional Forester, since

the date the Patent was issued in 1976, the Forest Service has grown larger and more complex

and the authority to issue closure decisions has been delegated to Forest Supervisors.

Specifically, it is currently "the responsibility of the Forest Supervisor [] to: . . . [i]ssue and post

orders closing or restricting use on Forest development roads."  Transportation System

Operations Handbook WO Amendment 7709.59-91-1 at Chapter 20.42, available at

http://www.fs.fed.us/im/directives/fsh/7709.59/20.1-23.23.txt (last visited October 30, 2007).

Therefore, the 1997 Closure Order signed by the Forest Supervisor satisfies the terms of the

Patent.  *See Collins v. Finnell*, 29 P.3d 93, 100 (Wyo. 2001), ("[A]ny ambiguity in the contract is

---

[10] The United States recognizes this fact as provided in the Declaration of Clinton D. Kyhl, Pl.
Br. Re:  Road at Ex. 2 ¶ 5, where Mr. Kyhl avers that "In so acting [when issuing a closure
order] the Forest Supervisor generally acts upon the recommendation of a subordinate officer,
usually the District Ranger."  *Id.*

construed against the drafter of the agreement.") (internal citation omitted).  Thus, pursuant to

the terms of the Patent, because the Forest Supervisor closed, abandoned, and removed a portion

of one of the Forest Service roads crossing the Trust's Property and because the Forest

Supervisor has that delegated authority, both road segments described in the Patent have

terminated.

Instead of citing cases to support the argument that "The Regional Forester has the sole

authority to abandon the right-of-way," Pl. Br. Re:  Road at 8, the United States cites two cases

that are inapposite.  First, the United States cites *United States v. California*, 332 U.S. 19 (1947),

for the proposition that the federal government:

> is not to be deprived of [its property] interests by . . . rules designed particularly
> for private disputes over individually owned pieces of property; and officers who
> have no authority at all to dispose of Government property cannot by their
> conduct cause the Government to lose its valuable rights by their acquiescence,
> laches or failure to act.

Pl. Br. Re:  Road at 7–8 (citing *California*, 332 U.S. at 40).  In *California*, the question for the

Supreme Court was "whether the state or the Federal Government has the paramount right and

power to determine in the first instance when, how, and by what agencies, foreign or domestic,

the oil and other resources of the soil or the marginal sea, known or hereafter discovered may be

exploited."  *California*, 332 U.S. at 29.  These are not the facts of the instant action.

Additionally, the snippet cited by the United States does not control the instant case.  Pl. Br. Re:

Road at 7–8 (citing *California*, 332 U.S. at 40).  For example, the *California* Court did not

decide what law this Court should apply in the instant action.  *California*, 332 U.S. at 40.

Similarly, neither did the *California* Court suggest which government officers of the Forest Service had authority to act in the instant case. *Id.*

The United States then cites *United States v. 434.00 Acres of Land*, 792 F.2d 1006 (11th Cir. 1986), for the proposition that the road easements have not terminated because the United States has not acted in "strict compliance with federal law regarding disposition of real property interests." Pl. Br. Re: Road at 9. In *434.00 Acres of Land*, the United States had earlier obtained an easement over land owned by the appellants and later attempted to take those properties. *Id.*, 792 F.2d at 1007. The landowners alleged that the easements were granted for a particular purpose and the United States failed to use the easements for that purpose; thus, the easements terminated. *Id.* at 1008. This is in contrast to the facts of the instant case where the United States has complied with the clear language of the Patent and failed to use a segment of one of the reserved easements for a five year period thus terminating the road easements reserved in the Patent. DSOF at Ex. 1.

Despite this, the United States argues:

> Applying the rationale of *434.00 Acres*, even if the Forest Service did close the road segment through Fox Park to public traffic and no longer used that segment as a public thoroughfare, there is still no abandonment unless it is expressly done by the Federal official with authority to do so in accordance with the plain language of the easement.

Pl. Br. Re: Road at 9. The flaw in this statement was demonstrated above: the Forest Service did close, abandon, and remove a portion of one of the road segments through Fox Park; therefore, the easement terminated because it was "expressly done by the Federal official with

authority to do so [the Forest Supervisor] in accordance with the plain language of the [Patent]."
*Id*.

Finally, the United States' citation of these cases is merely an attempt to confuse the issue. The issue presented by the United States seems to be whether any action, or inaction, on the part of the Forest Service triggers "one of the two explicit conditions for <u>termination</u>[] set forth in the patent." Pl. Br. Re: Road at 5 (emphasis added). The conditions for termination in the Patent do not rely on <u>abandonment</u>: abandonment is a separate legal principle. Abandonment necessarily involves intent and subsequent actions, neither of which is necessary to trigger the conditions for termination in the Patent. In fact, the term "abandonment" is not found in the Patent. DSOF at Ex. 1. Instead, all that the Patent requires for termination of the road easements described therein is either: 1) the United States ceases to use a segment of the roads described in the Patent for five years for the purposes reserved, or 2) the Regional Forester [or Forest Supervisor through his delegated authority] determines that any segment of the roads described in the Patent is no longer needed for the purposes reserved. *Id.* Therefore, the cases relied upon by the Untied States are inapposite and summary judgment must be granted in favor of the Trust quieting title in the trust the portions of FSR 512 and 517 that cross the Trust's Property.[11]

---

[11] In the alternative, a factual inquiry may be required to determine whether the Forest Supervisor had the authority to close, abandon, and remove a portion of the easement crossing the Trust's Property, as he purported to do in the 1997 Travel Management Order. Thus, this issue may not be appropriate for summary judgment. F.R.C.P. 56(d).

**C. The Easements Terminated From Non-Use.**

As previously demonstrated, the easements reserved for FSR 512 and FSR 517

terminated from non-use. Trust Br. at 22. The United States, however, argues that "The

reserved right-of-way has not terminated through non-use." Pl. Br. Re: Road at 10. In support

of its argument, the United States supplies a plethora of statements in declarations providing that

Forest Service personnel have visited Fox Park since 1992. *Id*. at 10–13. While the United

States attempts to dazzle this Court with irrelevant declarations, those declarations fail to provide

an iota of evidence that the United States has used the obliterated portion of road since at least

1996. *Id*. In fact, the United States has not used the obliterated portion of road since 1996

because it could not use the road: that portion of road does not exist because the Forest Service

removed it! DSOF at Ex. 2; Ex. 3 ¶ 14. Because the Forest Service obliterated and closed a

portion of one of the roads over the Trust's Property, for one to travel that segment would require

an off-road adventure through the existing tall grasses and over, or around, the trees planted by

the Forest Service. DSOF at Ex. 3 ¶ 14; Ex. D; Ex. E. This fact is uncontested by the Forest

Service; it has failed, "for a period of five years," to use "any segment [of FSR 512 or FSR 517]"

for any purpose; therefore, "the easement traversed thereby [has] terminate[d]." DSOF at Ex. 1.

While ignoring that it has failed to use this segment of the now non-existent road, the

United States provides statements through the declarations of Curtiss J. Orde, Clinton D. Kyhl,

and P. Michael Winters. Pl. Br. Re: Road at Exs. 2, 3, 4. The Trust disagrees with a number of

the statements provided therein. For example, Mr. Kyhl declares that "There is no record . . . of

any non-Federal contribution to [the traffic re-route around Fox Park]." Pl. Br. Re: Road at Ex.

2 ¶ 8.  This statement is false.  In fact, at the instruction of the Forest Service, Mr. Brandt

installed a gate at the south end of the Trust's Property at the intersection with FSR 512.  DSOF

at Ex. 3 ¶ 18.  Additionally, upon closure of the road segments through the Trust's Property, Mr.

Brandt installed a fence completely surrounding Fox Park, including a portion over and across

the closed road segment at the north end of the Trust's Property.[12]  Second Declaration of

Marvin M. Brandt ¶ 1 ("Second Brandt Decl."), a copy of which is attached hereto as Exhibit 1.

Clearly, this is "non-Federal contribution to this project."  Pl. Br. Re:  Road at Ex. 2 ¶ 8.

Mr. Kyhl then declares that "The portion of road subject to the [1997 Travel Management

Order] was different from the portion of road referred to in the [1996 Decision Memo]."  In

support of this, Mr. Kyhl asks the Court to look at the maps attached to the 1997 Travel

Management Order and the 1996 Decision Memo.  Neither of those maps purports to stand for

anything other than a representation of the general area; in fact, the only similarity between the

two maps is the labels on the roads.  For example, neither map contains a scale.  DSOF at Ex. 2;

Pl. Br. Re:  Road at Attach. C.  Additionally, the map attached to the 1996 Decision Memo uses

a haphazardly drawn ink mark to indicate the "proposed obliteration" with no indication as to its

dimensions.  DSOF at Ex. 2.  Furthermore, the 1997 Travel Management Order explicitly

provides that "The purpose of this order is to allow closure, abandonment, removal [of] the road

_____

[12] The fence installed by the Trust at the north end of Fox Park over and across the removed road
surface is recognized by the United States and referenced specifically in the Declaration of P.
Michael Winters.  Pl. Br. Re:  Road at Ex. 4 ¶ 5 ("Access from the North is blocked by a buck
and pole fence across the road right-of-way.").  Mr. Brandt installed this fence as seen in
Defendant's Statement of Facts at Exhibit D.

surface on a portion of FDR 512"; however, the map only indicates the portion of the road that was closed and not the portion that was abandoned or removed. Pl. Br. Re: Road at Attach. C. Finally, the map attached to the 1997 Travel Management Order provides different dimensions for FSR 512 and FSR 512.C. *Id.* When compared to the map attached to the 1996 Decision Memo, any attempt to use these maps for comparison purposes to prove what was done to any road in Fox Park is frustrated. *Id.*; DSOF at Ex. 2.

Mr. Kyhl also declares that "the Forest Service has always maintained the right to enter [Fox Park] on the Forest Development Road 512 in the course of official business." Pl. Br. Re: Road at Ex. 2 ¶ 12. This statement is false. The Forest Service does not have the right to enter Fox Park because Fox Park is private property owned by the Trust. DSOF at Ex. A. The Forest Service is only allowed to enter Fox Park through the gate on former FSR 512 because the Trust provided the Forest Service with permissive use. Second Brandt Decl. ¶ 2.

In the Declaration of Curtiss J. Orde, Mr. Orde provides a list of dates and reasons for entry to Fox Park.[13] The Trust disagrees, generally, with all of the entries listed, and disagrees specifically with those entries listed as July 2, 2000, July 14, 2000, August 14, 2000. The Trust agrees that Mr. Orde may have visited the vicinity of Fox Park to discuss a horse trespassing complaint, but disagrees that Mr. Orde entered Fox Park for such a purpose. Second Brandt Decl. ¶ 3. The Trust also disagrees with the entries listed as March 16, 2002, January 11, 2003,

---

[13] Mr. Orde specifically states he merely "entered Forest Development Road 512 within the Fox Park Estates," he never avers that he used the portion of road that was obliterated. Pl. Br. Re: Road at Ex. 3 ¶ 8.

January 12, 2003, and January 17, 2004, relating to snowmobile registrations.  Assuming, *arguendo*, that Mr. Orde was near the vicinity of Fox Park on those dates, Mr. Orde did not enter the gate on FSR 512 or travel on FSR 512 over the Trust's Property.  Second Brandt Decl ¶ 4. Instead, Mr. Orde would have used the snowmobile entrance to the east of the gate and never used any road on the Trust's Property.  Second Brandt Decl. ¶ 4.  Additionally, the Trust disagrees with the date listed as 11-26-05 "routine patrol, check road condition."  Pl. Br. Re: Road at Ex. 3 ¶ 8.  Assuming, *arguendo*, that Mr. Orde was in the vicinity of Fox Park on that date, Mr. Orde did not check the road conditions in Fox Park on behalf of the United States.  The United States has no concern for the road surfaces upon the Trust's Property.  Since at least 1996, the United States has performed no road maintenance and has not plowed the snow on any road surface on the Trust's Property.  Second Brandt Decl. ¶ 5.  The Trust, as owner of all road surfaces over and across the Trust's Property, has performed all maintenance and snow removal on those roads.  *Id.*

Mr. Orde also declares that "the Forest Service . . . has always maintained and exercised the right to enter on the closed portion of Forest Development Road 512."  Pl. Br. Re:  Road at Ex. 3 ¶ 9.  This statement is false.  The Forest Service does not have a right to enter, by any means, the Trust's Property.  The Forest Service is allowed to enter the closed portion of FSR 512 only because the Trust grants the Forest Service permissive use.  Second Brandt Decl. ¶ 2. Mr. Orde then declares that the United States has not relinquished ownership and control of the closed portion of FSR 512.  Pl. Br. Re:  Road at Ex. 3 ¶ 10.  This statement is false.  Pursuant to the terms of the Patent, because the United States removed a portion of one of the roads that

crossed the Trust's Property and then failed to use that portion of road for a period of five years, the easement terminated and the United States relinquished ownership and control. DSOF at Ex. 1.

> In his declaration, P. Michael Winters states:
>
> Over the course of the past decade, in the performance of my official duties, I have entered occasionally upon that portion of National Forest System Road (NFSR) 512 for the purposes of inspecting the Easements along NFSRs 512 and 517 that were reserved to the United States as an encumbrance on the Land Patent, issued to Melvin M [sic] Brandt and Lula M. Brandt on February 18, 1976 [sic] Like easements elsewhere on the National Forest, a purpose of these routine inspections is to check for encroachments from adjacent private lands, and to ascertain the general condition of the right-of-way for Forest Service uses.

Pl. Br. Re: Road at Ex. 4 ¶ 6. This statement is not true. The Forest Service has no interest in either portion of FSR 512 or FSR 517 that cross the Trust's Property. Since at least 1996, the Forest Service has done nothing with respect to the "general condition of the right-of-way": it has performed no maintenance and has performed no snow removal. *See* Second Brandt Decl. ¶ 5. All maintenance of all roads and all snow removal of all roads within Fox Park is conducted by the Trust. *Id.*

As part of its argument that "The reserved right-of-way has not terminated through non-use," the United States argues that "The 1997 order is *prima facie* evidence of the United States' continuing ownership of the reserved right-of-way."[14] Pl. Br. Re: Road at 10. The Trust cannot

---

[14] It is possible the United States believes the 1997 Travel Management Order provides evidence that the United States intended not to abandon the right-of-way; however, this evidence would be used to prove legal abandonment; intent is not a prerequisite for the easement to terminate under the language of the Patent.

fathom how the United States reaches that conclusion; after all, the 1997 Travel Management Order clearly provides that "the purpose of this order is to allow closure, abandonment, removal [of] the road surface on a portion of FDR 512, and rerouting of traffic onto FDR 512.C." Pl. Br. Re: Road at Attach. 1. Contrary to the assertion of the United States, this is evidence that the United States triggered one of the termination clauses in the Patent because the 1997 Travel Management Order closed, abandoned, and removed a portion of the road surface over the Trust's Property. *Id*. This portion of the road was then not used for a period of five years. DSOF at Ex. 3 ¶ 17. Thus, pursuant to the clear language of the Patent, the rights-of-way terminated. *Id*. at Ex. 1.

In sum, because the Forest Service has not used a segment of one of the roads reserved in the Patent for a five year period, both road easements reserved in the Patent have terminated. DSOF at Ex. 1. To the extent the United States believes it has used one of the reserved road easements as exercising a right, the Trust respectfully disagrees because the Trust, as owner of all roads within Fox Park, has given permission for the United States to use the road. *See* Brandt Decl. ¶ 2. Should the Court find resolution of this issue necessary to quiet title to FSR 517 and FSR 512, then the issue is not suitable for summary judgment as genuine issues of material fact exist. F.R.C.P. 56(d).

>    **D.**      **The United States Abandoned the Easements.**

As previously demonstrated, the United States abandoned the easements. Trust Br. at 22–23. However, in its argument that "The District Ranger's re-route decision did not terminate the right-of-way," the United States attempts to confuse the issue by applying the legal standard

for abandonment to the language of the Patent.  Pl. Br. Re:  Road at 6–9.  As demonstrated

above, termination of the rights-of-way under the terms of the Patent was achievable absent

abandonment; in fact, abandonment is in no way required for termination of the rights-of-way

under the terms of the Patent.  DSOF at Ex. 1.  Additionally, not only is the United States

incorrect to apply abandonment to the termination of the easement under the terms of the Patent,

but the United States' analysis of the legal standard for abandonment is off the mark.

The United States begins its argument by broadly stating, "It is well-established that

federal law governs federal property interests unless Congress by enactment makes state law

applicable."  Pl. Br. Re:  Road at 7 (citation omitted).  Then, without citing a specific federal law,

the United States appears to argue that it could not abandon the rights-of-way in this case unless

it was done under the Federal Property and Administrative Services Act of 1949, 40 U.S.C. §

471, *et seq*., now codified at 40 U.S.C. § 101, *et seq*.  Pl. Br. Re:  Road at 8–9 (citing *434.00*

*Acres of Land*, 792 F.2d at 1009–1010).  However, the Federal Property and Administrative

Services Act, by its own definition, does not apply to the instant action.  40 U.S.C. § 102.  That

statute provides, "The purpose of this subtitle is to provide the Federal Government with an

economical and efficient system for the following activities: . . . (3) Disposing of Surplus

property."  *Id*. § 101.  "Property" is defined by the statute as "any interest in property <u>except</u>–

(A)(ii) <u>land reserved or dedicated for national forest</u> or national park purposes."  *Id*. § 102

(emphasis added).  Clearly, because the Trust's Property was previously property "reserved or

dedicated for national forest . . . purposes," the Federal Property and Administrative Services Act

does not apply.

In fact, because no federal statute makes state or local law controlling in the instant action, federal common law should govern the United States' claims. *Superior Oil Co. v. United States*, 353 F.2d 34, 37 n.4 (9th Cir. 1965). However, because there has been little federal common law developed under facts such as those presented here, state law proves instructive. *United States v. Standard Oil Co.*, 332 U.S. 301, 309–310 (1947); *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 473–75 (1942) (Jackson, J., concurring); *see also* Restatement (Second) of Conflict of Laws § 226 (1971 & Cumm. Supp.) ("Whether there has been a transfer of an interest in land by operation of law and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs."). Justice Jackson explained judicial decisions to rely on state law in this way:

> I hardly suppose that Congress intended to set us completely adrift from state law with regard to all questions as to which it has not provided a statutory answer. An intention to give persuasive or binding effect to state law has been found to exist in a number of cases similar in that they arose under a law of the United States but were not governed by any specific statutory provision.

*D'Oench*, 315 U.S. at 473–74 (Jackson, J., concurring) (footnote omitted).

Thus, pursuant to Wyoming law, "Easements may be terminated by abandonment." *Mueller v. Hoblyn*, 887 P.2d 500, 505 (Wyo. 1994) (internal citation omitted). "Abandonment of an easement requires an intentional relinquishment indicated by conduct which discloses the intention to surrender the right to use the land authorized by the easement." *Mueller*, 887 P.2d at 505 (internal citations omitted).

The United States has shown the requisite intent and conduct to abandon FSR 512 through Fox Park. *See Seven Lakes Development Co., L.L.C. v. Maxson*, 144 P.3d 1239, 1248

(Wyo. 2006) (holding that, "The question of abandonment is one of fact, depending upon intention and conduct.").  In the instant case, the United States has, undisputedly, intentionally relinquished the easement both by intent and conduct; the 1996 Decision Memo and the 1997 Travel Management Order are evidence of the requisite intent and the subsequent installation of barricades preventing access to and use of FSR 512 and actions obliterating a portion of FSR 512 are evidence of the requisite conduct.  DSOF at Ex. 2; Ex. 3 ¶ 14.  Thus, because the United States has not had access to, and has not used, a portion of FSR 512 since at least November 1996 and because the United States intended to abandon FSR 512 and took actions to effectuate the abandonment, the road was, in fact, abandoned and, thus, reverted to the Trust.  Therefore, this Court should quiet title to former FSR 512 through Fox Park in favor of the Trust.

      E.      **The United States is Estopped From Claiming the Easements Have Not Terminated.**

The United States is estopped from claiming a right to any right-of-way reserved in the Patent because the Trust relied upon the United States' conduct when it abandoned the right-of-way and acted accordingly.  *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60 (1984) (leaving open the question whether estoppel may be used as a defense against the United States).  As explained by the Supreme Court:

> Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.  While a hallmark of the doctrine is its flexible application, certain principles are tolerably clear:
>
>             ***
>
> '(b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so

changed his position that it would be unjust to deprive him of that which he thus acquired.'

*** 

Thus, the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse.'

*Id.* (citing Restatement (Second) of Torts § 894(1)(1979); 3 J. Pomeroy, Equity Jurisprudence § 805, p. 192 (S. Symons ed. 1941)).  In its brief, the United States repeatedly alleges that the closure of the rights-of-way described in the Patent was done only at public expense and that the Trust contributed nothing to the action.  Pl. Br. Re:  Road at 6, 9, 13.  However, this is neither relevant nor true.  As part of the closure and road re-route, the Forest Service contacted Mr. Brandt and requested that he erect a gate at the south entrance to the Property.  DSOF at Ex. 3 ¶ 18.  Mr. Brandt complied, and at his own expense, constructed the gate, the purpose of which is to limit access to Fox Park to those to whom the Trust grants permission.  *Id.*; Second Brandt Decl. ¶ 1.

Additionally, in reliance upon the closure, abandonment, and removal of a portion of one of the roads reserved in the Patent, Mr. Brandt erected a "buck and pole" fence that completely surrounds Fox Park.  Second Brandt Decl. ¶ 1.  Prior to the closure, abandonment, and removal of a portion of one of the roads reserved in the Patent, it was not feasible to construct this fence because the purpose of the fence was to keep roaming cattle out of Fox Park.  *Id.*  Due to the need to maintain an entrance and exit for both the railroad easement and the roads reserved in the Patent, four large gaps in the fence existed.  *Id.*  However, once the Forest Service acted on its decision to close, abandon, and remove a portion of one of the roads reserved in the Patent, Mr.

Brandt was able to construct the fence and successfully meet the purpose of keeping roaming livestock out of Fox Park. *Id.* The fence and gate were built and are maintained at considerable expense to Mr. Brandt. *Id.*

Mr. Brandt's reliance in this instance is reasonable because the Forest Service published the 1996 Decision Memo and took subsequent actions, including the 1997 Travel Management Order, removal of a portion of one of the roads reserved in the Patent, and seeding the area to grass. DSOF at Ex. 2; Ex. 3 ¶ 14. Additionally, the Forest Service has failed to maintain any portion of any road within Fox Park, and has failed to plow any portion of any road within Fox Park. Second Brandt Decl. ¶ 5. Put simply, the United States has failed to act as owner of any road within the boundaries of Fox Park. Thus, should the United States now be granted the relief it seeks, the Trust would be forced to remove the gate and fence that Mr. Brandt installed, at considerable expense and at the request of the Forest Service, and the property interest the Trust believed it was entitled would now lie with the United States. Therefore, equity requires that the United States must be estopped from claiming an interest in the portions of FSR 512 and FSR 517 that exist on the Trust's Property.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny Plaintiff's Motion for Summary

Judgment and grant the Motion for Summary Judgment filed by Marvin M. Brandt Revocable

Trust and Marvin M. Brandt, Trustee.

DATED this 13th day of November, 2007.

Respectfully submitted by:

MOUNTAIN STATES LEGAL FOUNDATION

/s/ Joshua D. McMahon
Joshua D. McMahon, Esq.
William Perry Pendley, Esq. (Wyo. Bar No. 20995)
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone:  (303) 292-2021
Facsimile:  (303) 292-1980
jmcmahon@mountainstateslegal.com

Attorneys for Defendants Marvin M. Brandt
Revocable Trust and Marvin M. Brandt, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2007, I filed the foregoing **BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**, electronically through the CM/ECF system, which caused the following to be served by electronic means:

Carol A. Statkus
Nicholas Vassallo
Assistant U.S. Attorneys
P.O. Box 668
Cheyenne, Wyoming 82003-0668
carol.statkus@usdoj.gov
nick.vassallo@usdoj.gov

*Counsel for Plaintiff*

Philip A. Nicholas
Anthony Nicholas Goodrich & Tangeman
P.O. Box 928
Laramie, Wyoming 82073-0928
(307) 742-7140
nicholas@wyolegal.com

*Counsel for Breazeale Revocable Trust and Daniel and Susan McNierney*

Charles Michael Aron
Aron & Hennig
1472 North 5th Street
Laramie, Wyoming 82072
(307) 742-6645
cma@a-hlaw.com

*Counsel for Lawrence R. Otterstein and Ginny L. Otterstein*

James P. Schermetzler
Richard Carl Bohling
Albany County Attorney's Office
Albany County, Wyoming
525 East Grand Avenue, Suite 100
Laramie, Wyoming 82070
jschermetzler@co.albany.wy.us

*Attorney for Albany County Commissioners*

Theodore C. Preston
Prehoda, Leonard & Janack
P.O. Box 789
Laramie, Wyoming 82073
(307) 742-7896
tpreston @laramielaw.com

*Counsel for DuWayne and Elizabeth Keeney, Kenneth R. Lankford, II, Kenneth R. Lankford, Sr., Patrick and Patricia Rinker*

Karen J. Budd-Falen
Budd-Falen Law Offices
300 East 18th Street
P.O. Box 346
Cheyenne, Wyoming 82003
(307) 632-5105
main@buddfalen.com

*Counsel for David and Marilyn Yeutter and Roger L. Morgan*

Karl Morell
Ball Jank, LLP
1455 F Street, N.W., Suite 225
Washington, D.C. 20005

*Attorney for Wyoming & Colorado Railroad Company, Inc.*

Gay Vanderpoel Woodhouse
Gay Woodhouse Law Office
211 West 19th Street, Suite 308
Cheyenne, Wyoming 82001
gaywoodhouselaw@aol.com

*Attorney for Donald and Wanda Graff*


I hereby certify that on this 13th day of November, 2007, I sent a true and accurate copy of **BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**, by U.S. Mail, first class, postage paid, addressed as follows:

Richard Carl Bohling
Albany County Attorney's Office
525 Grand Avenue, Suite 304
Laramie, Wyoming 82070

Mason F. Skiles
Skiles & Associates, LLC
502 South 4th Street
Laramie, Wyoming 82070
skilesassoc@tribcsp.com

*Counsel for Gary and June Williams*


Glenna Louise Marrs Trust
Glenna Marrs and Rondal Wayne, Trustee
652 U.S. Highway 287
Laramie, Wyoming 82070

Steven P. Taffe
Janis A. Taffe
4062 Highway 230
Laramie, Wyoming 82070


Ronald Wayne
376 Gilmore Gulch
Laramie, Wyoming 82070


/s/ Joshua D. McMahon
Joshua D. McMahon, Esq.