JOHN R. GREEN
Acting United States Attorney
CAROL A. STATKUS
NICHOLAS VASSALLO
Assistant United States Attorneys
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone:  307-772-2124
Facsimile:  307-772-2123
carol.statkus@usdoj.gov
nick.vassallo@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-CV-0184J |
| | ) | and |
| WYOMING AND COLORADO | ) | Consolidated Case No. 06-CV-171J |
| RAILROAD COMPANY, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## UNITED STATES' RESPONSE TO MOTION FOR SUMMARY
## JUDGMENT OF DEFENDANTS MARVIN M. BRANDT
## REVOCABLE TRUST AND MARVIN M. BRANDT, TRUSTEE

Plaintiff United States, by and through the United States Attorney for the District of

Wyoming and Assistant United States Attorneys Carol A. Statkus and Nicholas Vassallo,

respectfully submits this response to the Motion for Summary Judgment filed by the Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee (hereinafter "Brandt").

## Introduction

Defendant Brandt essentially raises three arguments regarding title to the railroad right-of-way.  First, he argues that the United States has not retained fee title to the land underlying the right-of-way.  Second, he asserts that the United States never retained any interest in the railroad right-of-way.  Third, he argues that if the United States had a reversionary interest, that interest was conveyed to Brandt's predecessor by the patent issued in 1976.  All of these arguments should be rejected.

The Court need not consider Brandt's first argument because the United States does not claim fee title to the land underlying the right-of-way, but only the right-of-way itself. In support of his second argument, Brandt relies upon a line of cases from the Court of Claims and the Federal Circuit which conflict with the law of this Circuit.  For that reason, and because Tenth Circuit authority presents the better-reasoned view, this Court should reaffirm the principle that the United States retained an interest in 1875 Act rights-of-way. Brandt's third argument is unpersuasive and inconsistent with applicable law.  Accordingly, that argument should also be rejected, and title to the right-of-way should be quieted in favor of the United States.

Brandt also argues he is entitled to a judgment quieting title in his favor to the road that runs through Fox Park, Wyoming, parallel to the railroad right-of-way.  He argues that the road easement has either terminated or been abandoned by the United States.  As set forth in argument 4, *infra,* Brandt has failed to show that either of the two conditions set forth in the patent for termination of the road easement has occurred.  He has also failed to show by clear and convincing evidence that the United States has abandoned the road easement. Therefore, the road easement should be quieted in the United States.

**<u>Argument</u>**

**1.     The United States Does Not Claim Fee Title to the Land Underlying the Right-of-Way.**

Brandt appears to advocate that the United States has not retained fee title to the land *underlying* the railroad right-of-way.  *See* Brandt's brief at 7-9.  The parties seem to be in agreement on this issue, as the United States does not claim to hold fee title to the land underlying the right-of-way.  Rather, it asserts title only to the right-of-way itself, which comprises only the surface and as much of the subsurface as is needed to accomplish the right-of-way's transportation purpose.  Consequently, the Court need not consider Brandt's argument on this issue.

**2.      An 1875 Act Right-of-Way is a Statutory Interest in Land in Which the United States Retained a Reversionary Interest**

Brandt asserts that the United States never retained an interest in 1875 Act rights-of-way.  In support of this theory, Brandt heavily cites the Supreme Court's decision in *Great Northern v. United States*, 315 U.S. 262 (1942).  He attaches great significance to the Court's use of the term "easement," in that opinion, in describing an 1875 Act right-of-way.  Relying upon *Great Northern*, Brandt attempts to develop a meaningful distinction between "limited fee" rights-of-way and "easement" rights- of-way.  As noted by the Tenth Circuit, however, this distinction is no longer helpful in describing the attributes of a railroad right-of-way:

> [W]e are not impressed with the labels supplied to the title of the railroads in their rights-of-way across the public lands of the United States. The concept of 'limited fee' was no doubt applied in [*Northern Pacific Ry. Co. v.] Townsend* [190 U.S. 267 (1903)] because under the common law an easement was an incorporeal hereditament which did not give an exclusive right of possession. With the expansion of the meaning of easement to include, so far as railroads are concerned, *a right in perpetuity to exclusive use and possession*, the need for the 'limited fee' label disappeared.

*Energy Transp. Systems, Inc. v. Union Pacific R. Co.*, 606 F.2d 934, 937 (10th Cir. 1979) (Emphasis supplied).  See also *Energy Transp. Systems, Inc. v. Union Pac. R. Co.*, 435 F.Supp. 313, 316-317) (D.Wyo. 1977), *aff'd,* 606 F.2d 934 (10th Cir. 1979)(noting that "the 1862 Act and 1875 Act were very similar" and "the Tenth Circuit . . . casts some doubt as to the differences between the two Acts relative to the surface grant.")

The Tenth Circuit has observed that even if a federally-granted railroad right-of-way is "in the nature of an easement," the interest obtained is substantial:

> Of course, a railroad company which acquires a right of way over and through lands of another acquires more than the mere right of passage over such lands. It acquires the right to excavate drainage ditches; to construct beneath the surface supports for bridges and other structures; to erect and maintain telegraph lines and supporting poles with part of the poles beneath the surface; to construct passenger and freight depots, using portions of the land below them for foundations; to construct signals; to make fills and cuts to decrease the grades of their rail lines, and to use material from the land covered by the right of way to make such fills; and to construct a roadbed and lay its ties and rails thereon. Hence, it has substantial surface and subsurface rights, which it is entitled to have protected.

*Kansas City Southern Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829, 834 (10th Cir. 1973).[1]

Moreover, as the court explained in *State of Idaho v. Oregon Short Line R.R. Co.*, 617 F. Supp. 207, 212 (D. Idaho 1985), "even if the 1875 Act granted only an easement, it does not necessarily follow that Congress would or did not intend to retain an interest in that easement." Several courts, including the Tenth Circuit, have adopted the position that the United States retained a reversionary interest in 1875 Act rights-of-way. The first of these

---

[1]See also *State of Idaho v. Oregon Short Line R.R. Co.*, 617 F. Supp. 207, 210 (D. Idaho 1985), where the court explained that although an 1875 Act right-of-way did not include the underlying fee, "[t]he term 'right-of-way,' in the context of railroad property interests, is a term of art signifying an interest in land which entitles the railroad to the exclusive use and occupancy in such land."

cases is *Oregon Short Line, supra*, in which the court concluded that Congress did not grant just a common law easement, but a special statutory interest with retained reversionary rights in the United States.  The court reasoned that Congress, in enacting 43 U.S.C. § 912 as well as 43 U.S.C. § 913 and 23 U.S.C. § 316, understood that it had retained the reversionary interest in 1875 Act rights of way, and the court refused to nullify these statutes by holding the United States retained no reversionary interest.  *Id*. at 213.  The Tenth Circuit addressed the same issue in *Marshall v. Chicago and Northwestern Transp. Co.*, 31 F.3d 1028 (10th Cir. 1994), and expressly adopted the rationale of *Oregon Short Line.*  And in *Whipps Land & Cattle Co. v. Level 3 Communications*, *LLC*, 658 N.W.2d 258 (Neb. 2003), the Nebraska Supreme Court agreed with *Oregon Short Line* and *Marshall*. [2]

Brandt relies heavily upon *City of Aberdeen v. Chicago and North Western Transp. Co.*, 602 F. Supp. 589 (D.S.D. 1984).  *City of Aberdeen*, however, viewed *Great Northern* as holding that the 1875 Act granted "mere easements" that operated in accordance with common-law principles, *id*. at 593, a view that is widely rejected by other courts.  In addition, *City of Aberdeen* relied solely on dicta in *Wyoming v. Udall*, 379 F.2d 635, 639 (10th Cir. 1967), which stated that section 912 applied only to pre-1871 grants.  *Id*. at 639.

_____

[2] The Ninth Circuit has also observed  that "Section 912 applies to grants both before and after 1871." *Vieux v. East Bay Reg'l Park Dist*., 906 F.2d 1330, 1335 (9th Cir. 1990). See also *Hamilton v. King County*, 2000 WL 1772525 (Wash. App. Div. 1 2000) (unpublished opinion).

This dicta was rejected by the Tenth Circuit when it held, ten years after *City of Aberdeen*, that section 912 applies to 1875 Act rights-of-way.  *See Marshall*, 31 F.3d at 1031 n.2.[3] Brandt also relies upon a line of cases in the Court of Claims and the Federal Circuit, but those cases are in conflict with the Tenth Circuit's view as expressed in *Marshall*.[4]  Brandt also relies upon *Great Northern*, *supra*, but that case did not address whether the United States retained a reversionary interest in 1875 Act rights-of-way.  *Great Northern* addressed the question of whether the Act granted the subsurface mineral rights to the railroads.  It did not speak to the question of what interests the United States retains. Nothing in *Great Northern* indicates that Congress intended to retain the reversionary interests in rights-of-way granted prior to 1871 and relinquish them thereafter. To the contrary, there is ample evidence

_____

[3] See also *Missouri, Kan. & Tex. Ry. Co. v. Kansas Pac. Ry. Co.*, 97 U.S. 491, 497 (1878) ("It is always to be borne in mind, in construing a congressional grant, that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of Congress. That intent should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private parties.... [T]he rules of the common law must yield in this, as in other cases, to the legislative will.")

[4] Brandt implies that the United States' retention of the reversionary interest in the right-of-way is inconsistent with the position of the Department of Interior.  At times, Interior (like the courts) has struggled with terminology in characterizing the interest conveyed by the railroad right-of-way statutes.  But Interior currently describes 1875 Act rights-of-way as granting to the railroads an easement that is tantamount to a fee interest in the surface as well as the subsurface to the extent it may be used for the installation and support of structures and other improvements of the railroad. See *MCI Fiber Optic*, 96 Int. Dec. 439, 450 (1989).

that Congress understood it had retained the reversionary interest in both pre- and post-1871 rights-of-way.

Congress demonstrated its understanding that the United States retained the reversionary interest in 1875 Act rights-of-way when it enacted, in 1922, the Railroad Right-of-Way Abandonment Act, 43 U.S.C. § 912.[5] The 1922 Act was specifically intended to address forfeitures or abandonments of rights-of-way granted under the 1875 Act.[6] The 1922 Act provided that whenever a railroad ceased use and occupancy of a right-of-way granted to it from the federal public lands,

> all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or

---

[5]   "It is settled that subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject." *Great Northern*, 315 U.S. at 277 (internal quotations omitted).  In particular, courts may consider subsequent legislation that clarifies or depends on a particular interpretation of earlier legislation to have effect. *See Bell v. New Jersey*, 461 U.S. 773, 789-90 (1983) (view of later Congress persuasive in determining meaning of earlier statute); *Wilson v. United States*, 917 F.2d 529, 535 (Fed. Cir. 1990) (same, 1987 statute used to determine meaning of 1956 enactment); *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980) (giving "significant weight" to the views expressed in 1972 statute to determine the meaning of 1936 statute); *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 393 (1977) (1976 amendments used to construe 1946 statute).

[6]   *See* Sen. Rep. No. 388, 67th Cong., 2d Sess.  (January 6, 1922), at 1 (referencing section 4 of the 1875 Act "under which most of the rights of way over public lands have been granted") and at 2 (explaining how the statute operates on 1875 Act rights-of-way).

> abandonment be transferred to and vested in any person . . . to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality . . . .

43 U.S.C. § 912.  By enacting the 1922 Act to affirmatively transfer the United States' rights in abandoned 1875 Act rights-of-way to the owners of property traversed by them, Congress expressed its understanding that the 1875 Act retained a reversionary interest in the rights-of-way in the United States.   If the United States retained no interest in the rights-of-way, no affirmative action by Congress to convey them to the surrounding landowner would be required.  Thus, to conclude that the United States holds no reversionary interest in the 1875 Act rights-of-way would improperly read the statute as having no effect on the very rights Congress expressly intended to address.[7]

Even in the 1922 Act, Congress provided that upon a decree of abandonment, title to the right-of-way would *not* vest in the owner of the underlying fee if public roads had previously been established on the right of way or were established within a year after abandonment, or if the right-of-way was within a municipality.  43 U.S.C. § 912; *see also*

---

[7]   See *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("when two statutes are capable of co-existence, it is the clear duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"), quoted in *Liesegang v. Secretary of Veterans Affairs*, 312 F.3d 1368, 1374 (Fed. Cir. 2002).

S. Rep. No. 388 at 2.  This demonstrates  Congress's understanding that it had retained interests in the 1875 Act rights-of-way and could affect their disposition.  If the United States possessed no reversionary right in the right-of-way, Congress could not have directed these alternative dispositions of the right-of-way.  Moreover, this provision in the 1922 Act undercuts Brandt's argument that the Act was merely a clarification that the rights-of-way passed to subsequent patentees of the underlying fee in accordance with common-law principles.

In 1988, Congress again demonstrated its understanding that the United States retained an interest in 1875 Act rights-of-way, when it enacted 16 U.S.C. §1248 (c).  That statute effectively repealed those portions of the 1922 Act which allowed the government to relinquish its interest in these rights-of-way to adjacent landowners, requiring instead that the rights remain in the United States upon their abandonment or forfeiture.

The position of the United States in this case represents the most sensible way to view the operation of the 1875 Act rights-of-way.  It reconciles the various decisions of the Supreme Court on the nature of the interest in railroad rights-of-way. The rulings in *Townsend, Great Northern,* and *United States v. Union Pacific Railroad Co.*, 353 U.S. 112 (1957) can be reconciled if the rights-of-way in each case are viewed as consisting of an interest in the surface and the subsurface as necessary for transportation purposes that reverts

to the United States if the railroad forfeits or abandons it. This interpretation also imputes to Congress a consistent intent to reserve the United States' reversionary interest in the railroad rights-of-way. While Congress desired to make less generous grants to railroads after 1872, there is no evidence that Congress sought to eliminate altogether any reversionary interest of the government in the rights-of-way after 1872.  It also conforms to the subsequent statutes Congress enacted to provide for the various dispositions of the rights-of-way, including the 1922 statute providing for the establishment of highways on 1875 Act rights-of-way (or their conveyance to municipalities) if a railroad ceases its use - or, if neither of these events occurs, conveyance of the reverted interest to the patentee of the parcel where the right-of-way is located. The provisions in these statutes directing disposal of the rights-of-way were only necessary or possible if the United States retained the right to direct their disposal - that is, if the United States held the reversionary interests.

3.     **The United States Did Not Lose its Reversionary Interest When it Patented the Underlying Fee Interest to Brandt's Predecessor.**

Brandt argues that even if the United States retained a reversionary interest in the right-of-way under Section 912, it conveyed that interest to Brandt's predecessor in the 1976 patent. The Tenth Circuit rejected a similar argument in *Marshall* where it stated:

> By its very language, counsel argues, the statute has effect only if the United States has some "right, title, interest and estate" in the lands in question, and that in its patent to Marshall's predecessor in interest the United States retained

no interest of any sort, other than minerals.  We do not read the statute as counsel does. In this regard, we note that the statute is designed to cover the situation where the United States grants a railroad company a right of way over public lands and thereafter conveys or purports to convey to another "the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures. . . ."  That would, to us, appear to cover the instant case.

Thus, the Tenth Circuit has held that Section 912 applies whether or not the patent language could be construed as reserving the United States' reversionary interest.  Because Section 912 applies, the 1988 amendment to that statute, 16 U.S.C. § 1248(c), results in reversion of the right-of-way to the United States upon abandonment by the railroad.  *See Phillips Company v. Denver & Rio Grande Western RR Co.*, 97 F.3d 1375, 1377-78 (10th Cir. 1996), cert. denied 521 U.S. 1104 (1997)(noting that landowner was "hard pressed to assert a present reversionary interest in the right of way, in light of 16 U.S.C. § 1248(c)"); *Mauler v. Bayfield County*, 204 F.Supp. 2d 1168 (W.D.Wis. 2001), *aff'd* 309 F.3d 997 (7th Cir. 2002) (Section 1248(c) "changed the disposition of the federal interests involved, causing them to revert to the United States rather than to be transferred to adjacent landowners").

Brandt's patent argument fails to properly apply the appropriation doctrine.  Under that doctrine, where public land has already been appropriated for a particular use, it cannot be subsequently conveyed by a patent.  *See Wilcox v. Jackson*, 38 U.S. 498 (1839).  Under the law of this Circuit, the United States retained a reversionary interest in both 1875 Act

rights-of-way and earlier rights-of-way. *See Marshall, supra,* at 1030-32. Consequently, the appropriation doctrine should be applied to 1875 Act rights-of-way in the same manner it is applied to pre-1871 rights-of-way. With pre-1871 rights-of-way, the right-of-way corridor was deemed to be taken entirely out of the category of public lands available to patent, even if the patent did not contain an exclusion for the right-of-way. *Townsend, supra,* 190 U.S. at 270. This principle should similarly be applied to 1875 Act rights-of-way. The 1875 Act rights-of-way operated in the same general manner as the pre-1871 Act rights-of-way. A grant of an 1875 Act right-of-way resulted in an appropriation of the railway corridor. *See Boise Cascade Corp. v. Union Pac. R. Co.*, 630 F.2d 720, 723 (10th Cir. 1980) ("The disputed land was appropriated by the Railroads under the 1875 General Right of Way Act"). Because the right-of-way at issue here had already been appropriated for a particular use, it was not available for patenting when Brandt's predecessor received his patent in 1976.[8] *See Wilcox v. Jackson*, 38 U.S. 498 (1839). Again, this principle applies even where the patent did not expressly except the particular land interest from the conveyance. *See id.*

---

[8] Because the 1875 Act only granted the surface interest (and ancillary subsurface interests) to the railroad, it is only those interests that are excluded from location by homesteaders and excluded from their patents. Thus, the patent conveys to the landowner the subsurface lands underlying the right-of-way (except to the extent the subsurface is required to achieve the easement's transportation purposes )because these rights were not granted to the railroad and were thus available for patent.

-13-

Brandt seeks support from the "general rule" which provides that "when a patent issues in accordance with governing statutes, all title and control of the land passes from the United States."  Brandt brief at 10 (quoting *Swendig v. Washington Water Power Co.*, 265 U.S. 322, 331(1924)).  This rule, however, provides no support for Brandt.  As discussed above, previously appropriated interests are not conveyed by a patent, and the issuance of a patent even without a reservation does "not convey what the law reserved."  *Swendig, supra,* at 331-32.  The law reserves in the United States a reversionary interest in 1875 Act rights-of-way.  Consequently, as a matter of law, the patent could not convey it away.

Furthermore, even if the interest had been available for patenting, the patent expressly provides that the conveyance is "subject to" the railroad right-of-way.[9]  The right-of-way, in

---

[9] Specifically, the patent (United States Exhibit 11) provides that the land is granted

"EXCEPTING AND RESERVING **TO THE UNITED STATES** from the land granted a right-of-way thereon for ditches or canals constructed by the authority of the United States; **and**

\* \* \*

"SUBJECT TO those rights for railroad purposes as have been granted to the Laramie Hahn's Peak & Pacific Railway Company, its successors or assigns, by permit Cheyenne 04128 under the Act of March 3, 1875, 43 U.S.C. 934-939."

(Emphasis supplied).

turn, contains a reversionary interest in the United States.  Thus, the patent was "subject to" the United States' reversionary interest.  If there were any doubt regarding the effect of the patent's "subject to" language, Brandt's claim is still foreclosed by the well-established rule that land grants, including patents, are construed favorably to the government, and any doubts regarding the scope of a patent conveyance are resolved in the government's favor. *Koch v. U.S.*, 846 F.Supp. 913 (D.Colo. 1994).

Brandt argues at page 16 of his brief that the United States lost its reversionary interest because it "only chose to make the patent 'subject to' the railroad easement and failed to reserve any interest in the railroad easement."  Actually, the "subject to" terminology is derived not from some evaluative choice made in preparing the 1976 patent, but rather from the 1875 Act itself, which provides that "lands over which such right of way shall pass shall be disposed of *subject to* such right of way."  (Emphasis supplied).  The patent did nothing more, and nothing less, than what the statute itself directed.   Under the statute, *all* subsequently patented lands over which an 1875 Act right-of-way passed were patented "subject to" the right-of-way.  If Brandt's argument is taken to its logical conclusion, the United States would never have a reversionary interest in 1875 Act rights-of-way.  The Tenth Circuit has stated otherwise. *Marshall, supra.*

Brandt argues that if the 1988 Act is applied to this action, the effect would be to "retroactively revert the abandoned easement to the United States." Brandt brief at 17. This argument overlooks the principle that even before the 1988 Act, the United States' reversionary interest was always under the control of Congress. Even in 1976, when Brandt's predecessor received his patent, Section 912 provided that a patentee in his position may or may not be the recipient of the United States' reversionary interest. Depending upon the circumstances, it could pass to the patentee, or to an entity which established a public highway on the right-of-way within one year of an abandonment decree, or to a municipality if one were established. Thus, even before the 1988 Act, Brandt was never assured of receiving anything under the 1922 version of Section 912. Any unilateral expectation he might have had was always subject to the will of Congress, and Congress was entitled to determine in 1988, as it had in 1922, the best use for its interest in abandoned railroad rights-of-way.

4.     **Brandt has failed to show that either of the two conditions, set forth in the patent for termination of the road easement reserved by the United States, has occurred and has failed to show abandonment of the road easement by strong and confirming evidence.**

Brandt argues he is entitled to summary judgment quieting title in his favor to the road that runs through Fox Park, Wyoming. See Brandt's Brief in Support of his Motion for Summary Judgment, pp. 19-23. Brandt relies primarily on (1) a 1996 decision by the then

District Ranger to re-route traffic around Fox Park and close part of the subject road and (2) the erection of removable barriers.  See Brandt's Exhibit 2 & Exhibit 3, D & F.

In support of his motion for summary judgment insofar as it relates to the road issue, Brandt has submitted a copy of the pertinent patent, the October 22, 1996 Decision Memo from District Ranger Michael M. Sanders, and the Declaration of Marvin M. Brandt, with attachments.[10]  The patent sets forth the two explicit conditions whereby the easement reserved by the United States for the road through Fox Park (variously known as Forest Development Road 512, Forest Service Road 512, Platte Access Road No. 512, and National Forest System Road 512) would terminate.  Both parties agree that the two conditions for termination of the easement are expressly set forth in the patent.  They are: (1) non-use of the road by the United States for a five-year period or (2) a determination by the Regional Forester that the road or a segment of it is no longer needed for the purposes reserved.[11]  If neither condition has occurred, as the United States contends, then the United States' easement for the road through Fox Park is still extant.

---

[10] It should be noted that the United States also submitted the patent and the 1996 decision memo with its motion for summary judgment on the road easement issue.

[11] As to the second condition, the patent provides that if the necessary determination by the Regional Forester were made on a segment of the road, then only that segment would be affected, and the easement on the remainder of the road would be unaffected.

As for the first condition, non-use by the United States for five years, the best Brandt can say is that "[t]o the best of [his] knowledge, the Forest Service has not used that portion of Forest Service Road 512 that it closed through Fox Park, Wyoming, since it took the actions described in paragraph 14" (i.e., installing a barrier on the north end in Nov. 1996 and removing the road surface on .2 miles of the road and seeding it to grass).  Declaration of Marvin Brandt (Exhibit 3), at ¶ 17.  But, as shown by the Orde and Winters declarations, submitted by the United States with its summary judgment motion and incorporated here by reference, Brandt's knowledge as to the Forest Service's use of the road is incomplete.  Only the declarations of Mr. Orde and Mr. Winters complete the factual picture as to the Forest Service's continued use of the subject road and show that the first condition set forth in the patent for termination of the easement has not occurred.

As for the second condition, nothing that Brandt has submitted shows that the Regional Forester made the determination required by the patent.  The 1996 decision memo shows that a District Ranger decided to re-route traffic around Fox Park and to close and remove a .2 mile segment (roughly half) of the Forest Service road through Fox Park.  That decision did not apply to the entire road through Fox Park, only to a .2 mile segment of it.  Moreover, it was not a decision made by the Regional Forester, a higher level official than a district ranger, and the *only* official named in the patent as having authority to make an

-18-

easement termination determination.   The second condition for termination of the easement set forth in the patent has, therefore, not been met.

Brandt makes a third argument citing *Mueller v. Hoblyn*, 887 P.2d 500 (Wyo. 1994) – that even if neither condition for termination was met, the United States has abandoned the road easement pursuant to Wyoming law.   It is the United States' position that the patent provides the only two ways for relinquishment of the easement.   There is no third way.   But, in any event, the *Mueller* case does not help Brandt's cause here.   The *Mueller* case stands for the proposition that abandonment of a road easement is inferred only from strong and convincing evidence and that the burden to show abandonment is high.   887 P.2d at 506.   In *Mueller,* despite the fact that an alternative access route was used for many years, the Wyoming Supreme Court did not find that a road easement had been abandoned.   And, despite the fact that planting of crops, fencing and drilling of a well all took place on the road easement, the Court did not see these as permanent obstructions or evidence of abandonment. The court found no evidence that permanent buildings or permanent structures to obstruct the route of the easement were ever constructed by the easement holder.   887 P.2d at 505. In the present case, as in *Mueller,* there are no permanent structures blocking the route of the easement:  there are only removable gate-like barriers.   In the present case, as in *Mueller,* strong and convincing evidence of abandonment is lacking.   Rather, there is evidence of

continued use of the easement by the Forest Service and there is the 1997 road closure order,

by the Regional Forest Supervisor, which shows continued Forest Service jurisdiction over

the subject road and which is rescindable.

## Conclusion

For the foregoing reasons, the United States respectfully requests that summary

judgment be entered in its favor and that the Court enter an order declaring the right-of-way

abandoned and quieting title to the right-of-way in the United States.[12]   The United States

further requests that summary judgment be entered in its favor quieting title to the road

easement, FDR 512, in the United States.

---

[12] As noted in the United States' opening brief, a number of defendants have settled and two are in default.  The United States intends to file an unopposed motion for entry of judgment on the settled claims and a motion for entry of default judgment against the defaulting parties.  At present, the parties who have not entered settlement agreements, and against whom the United States seeks summary judgment, are Brandt, Gruber, Marrs, McNierney and Breazeale.  Negotiations are ongoing with Marrs, McNierney and Breazeale, and the United States will notify the Court if settlement agreements are reached with those parties.

As mentioned in footnote 2 of the United States' opening brief on the railroad right-of-way issue, the Grubers have encroaching structures in the right-of-way in the Mountain Home area.  The land underlying that portion of the right-of-way is owned entirely by the United States, so the Grubers have *no* colorable claim of title to any interest in the right-of-way.  Entry of summary judgment in favor of the United States will help facilitate a resolution to this trespass situation.

Respectfully submitted this 13th day of November, 2007.

          JOHN R. GREEN
          Acting United States Attorney


By:    _____
          CAROL A. STATKUS
          NICHOLAS VASSALLO
          Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2007, I served the foregoing *UNITED STATES' RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MARVIN M. BRANDT REVOCABLE TRUST AND MARVIN M. BRANDT, TRUSTEE* upon the following by the methods indicated below:

Charles Michael (Steve) Aron
Aron and Henning, LLP
1427 North Fifth Street, Suite 201
Laramie, WY 82072
cma@a-hlaw.com
*Attorney for Lawrence and Ginny Otterstein*

[ ] By Facsimile
[ ] By U.S. Mail - postage prepaid
[ ] By Hand Delivery
[ ] By Overnight Courier
[X] By Electronic Filing

William Perry Pendley
Joshua D. McMahon
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO 80227
wppendley@mountainstateslegal.com

[ ] By Facsimile
[ ] By U.S. Mail - postage prepaid
[ ] By Hand Delivery
[ ] By Overnight Courier
[X] By Electronic Filing

*Attorney for Marvin M. Brandt*

Richard C. Bohling
Albany County Attorney's Office
525 Grand Avenue, Suite 304
Laramie, WY 82070
rbohling@co.albany.wy.us
*Attorney for Albany County Commissioners*

[ ] By Facsimile
[ ] By U.S. Mail - postage prepaid
[ ] By Hand Delivery
[ ] By Overnight Courier
[X] By Electronic Filing

James P. Schermetzler                              [  ] By Facsimile
Albany County Attorney's Office                    [  ] By U.S. Mail - postage prepaid
525 Grand Avenue, Suite 100                        [  ] By Hand Delivery
Laramie, WY 82070                                  [  ] By Overnight Courier
jschermetzler@co.albany.wy.us                      [X] By Electronic Filing
*Attorney for Albany County Commissioner*

Karen J.Budd-Falen                                 [  ] By Facsimile
Brandon Lee Jensen                                 [  ] By U.S. Mail - postage prepaid
Budd-Falen Law Offices LLC                         [  ] By Hand Delivery
P.O. Box 346                                       [  ] By Overnight Courier
Cheyenne, WY 82003-0346                            [X] By Electronic Filing
main@buddfalen.com
*Attorney for Roger L. Morgan;*
*Marilyn & David Yeutter; and Ronald B.*
*and  Helen D. Yeutter*

Philip A. Nicholas                                 [  ] By Facsimile
Anthony,   Nicholas,   Goodrich   &               [  ] By U.S. Mail - postage prepaid
Tangeman                                           [  ] By Hand Delivery
P.O. Box 928                                       [  ] By Overnight Courier
Laramie, WY 82073                                  [X] By Electronic Filing
nicholas@wyolegal.com
*Attorney for Daniel & Susan McNierney*
*and Breazeale Revocable Trust*

Theodore C. Preston                                [  ] By Facsimile
Prehoda, Leonard & Hanack, LLC                     [  ] By U.S. Mail - postage prepaid
P.O. Box 789                                       [  ] By Hand Delivery
Laramie, WY 82073-0789                             [  ] By Overnight Courier
tpreston@laramielaw.com                            [X] By Electronic Filing
*Attorney for Patrick R. and Lynda L.*
*Rinker; and Patricia A. Rinker Flanigin*
*DuWayne & Elizabeth Keeney*
*Kenneth R. Lankford Sr.*
*Kenneth R. Lankford, II*

Mason F. Skiles                                    [  ] By Facsimile
Skiles & Rodriguez                                [X] By U.S. Mail - postage prepaid
502 South 4th Street                              [  ] By Hand Delivery
Laramie, WY 82070                                [  ] By Overnight Courier
*Attorney for Gary & June Williams and*          [  ] By Electronic Filing
*Edmund L. and Donna Ellen Gruber*

Gay Vanderpoel Woodhouse                         [  ] By Facsimile
Gay Woodhouse Law Office                         [  ] By U.S. Mail - postage prepaid
211 West 19th Street, Suite 308                  [  ] By Hand Delivery
Cheyenne, WY 82001                               [  ] By Overnight Courier
gaywoodhouselaw@aol.com                          [X] By Electronic Filing
*Attorney for Donald & Wanda Graff*

Karl Morell                                       [  ] By Facsimile
Ball Janik, LLP                                   [  ] By U.S. Mail - postage prepaid
1455 F Street N.W., Suite 225                     [  ] By Hand Delivery
Washington, D.C. 20005                            [  ] By Overnight Courier
kmorell@dc.bjllp.com                              [X] By Electronic Filing
*Attorney for Wyoming & Colorado*
*Railroad Company, Inc.*

Juan and Susan Torres                             [  ] By Facsimile
3513 Linestone Court                              [X] By U.S. Mail - postage prepaid
Fort Collins, CO 80525                            [  ] By Hand Delivery
                                                  [  ] By Overnight Courier
                                                  [  ] By Electronic Filing

Bunn Family Trust                                 [  ] By Facsimile
Debra R. Hinkel, Trustee                          [X] By U.S. Mail - postage prepaid
P.O. Box 1010                                     [  ] By Hand Delivery
Laramie, WY 82073                                [  ] By Overnight Courier
                                                  [  ] By Electronic Filing

Ralph L. Lockhart
P.O. Box 36
Laramie, WY 82073

[  ] By Facsimile
[X] By U.S. Mail - postage prepaid
[  ] By Hand Delivery
[  ] By Overnight Courier
[  ] By Electronic Filing


Duane and Patricia King
1802 Arnold Street
Laramie, WY 82070

[  ] By Facsimile
[X] By U.S. Mail - postage prepaid
[  ] By Hand Delivery
[  ] By Overnight Courier
[  ] By Electronic Filing


Marilyn Flint and Marjorie Secrest
17200 West Bell Road, Lot 2146
Surprise, AZ 85374

[  ] By Facsimile
[X] By U.S. Mail - postage prepaid
[  ] By Hand Delivery
[  ] By Overnight Courier
[  ] By Electronic Filing


Glenna Louise Marrs Trust
Glenna Marrs and Rondal Wayne, Trustees
376 Gilmore Gulch
Laramie, WY 82070

[  ] By Facsimile
[X] By U.S. Mail - postage prepaid
[  ] By Hand Delivery
[  ] By Overnight Courier
[  ] By Electronic Filing


Snowy Range Properties, LLC
1148 State Highway 11
Laramie, WY 82070

[  ] By Facsimile
[X] By U.S. Mail - postage prepaid
[  ] By Hand Delivery
[  ] By Overnight Courier
[  ] By Electronic Filing


Ray L. Waits
8736 S. Carr Street
Littleton, CO 80128-6914

[  ] By Facsimile
[X] By U.S. Mail - postage prepaid
[  ] By Hand Delivery
[  ] By Overnight Courier
[  ] By Electronic Filing

Michael and Sally Palmer              [  ] By Facsimile
715 S. 11th Street                    [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                     [  ] By Hand Delivery
                                      [  ] By Overnight Courier
                                      [  ] By Electronic Filing


Robert S. and Dorothy M. Pearce       [  ] By Facsimile
David M. Pearce, Steve M. Pearce and  [X] By U.S. Mail - postage prepaid
Kathlynn A. Lambert                   [  ] By Hand Delivery
2990 Plateau Drive                    [  ] By Overnight Courier
Salt Lake City, UT 84109              [  ] By Electronic Filing


Steven P. And Janis A. Taffe          [  ] By Facsimile
4062 Hwy 230                          [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                     [  ] By Hand Delivery
                                      [  ] By Overnight Courier
                                      [  ] By Electronic Filing


Billy M. and Tobin L. Ratliff         [  ] By Facsimile
719 South 4th Street                  [X] By U.S. Mail - postage prepaid
Laramie, WY 82070                     [  ] By Hand Delivery
                                      [  ] By Overnight Courier
                                      [  ] By Electronic Filing


_____

Melody Morse
Office of the United States Attorney