**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 SEP 28 PM 1:06

STEPHAN HARRIS, CLERK
CHEYENNE

UNITED STATES OF AMERICA,     )
                               )
    Plaintiff,                )
                               )
    v.                       )     Case No. 06-CV-184-J
                               )
WYOMING AND COLORADO RAILROAD   )
COMPANY, INC., et al.,          )

---

## ORDER DENYING THE BRANDTS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT

---

This matter comes before the Court pursuant to the application seeking attorneys' fees under the Equal Access to Justice Act ("EAJA") filed by Defendants Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee ("Brandts") (Doc. 224), the government's response in opposition to the motion (Doc. 226), and the defendants' further reply (Doc. 227).

### Background

This action was brought by the United States as plaintiff pursuant to 28 U.S.C. § 1345, seeking to quiet title to certain property located within Albany, Wyoming, Fox Park, Wyoming, and Mountain Home, Wyoming, including 66.16 miles of lands underlying abandoned rights of way along the WYCO rail line. Complaint, Doc. 1. Two specific acts provided the basis of the government's complaint, including the Abandoned Railroad Right-of-Way Act of 1922, codified at 43 U.S.C. § 912 and the National Trails Systems

Improvements Act of 1988, codified at 16 U.S.C. § 1248(c).  Doc. 1, Complaint, ¶¶ 27, 28,

29.  The complaint asserted further that:

> 30.  The right-of-way granted to the Laramie, Hahns Peak and Pacific Railway Company (subsequently vested in WYCO) under the General Railroad Right-of-Way Act of 1875 falls within the type described in the Abandoned Railroad Right-of-Way Act of 1922 because it was granted "over public lands of the United States . . . to [a] railroad company for use as a right-of-way for its railroad. . . . "
>
> 31.  Under the National Trails System Improvements Act of 1988, 16 U.S.C. § 1248(c), any and all right, title, and interest in rights-of-way of the type described in the Abandoned Railroad Right-of-Way Act of 1922 (43 U.S.C. § 912) are retained by the United States upon a judicial decree of abandonment.

The complaint requested declaratory relief ultimately determining and quieting title to the

abandoned right-of-way property at issue.

Because the Court assumes the parties' familiarity with the underlying facts and

prior proceedings need not be recited again here.  An understanding of the facts may also

be discerned upon readings of this District Court's Memorandum Opinion and Order on

cross motions for summary judgment (Doc. 170), the Tenth Circuit's decision affirming the

District Court at 496 Fed. Appx. 822, 825 (2012) (recognizing a circuit split of authority),

and (after granting certiorari (134 S.Ct. 48)), the United Supreme Court's opinion reversing

and remanding at 134 S.Ct. 1257 (2014) (Sotomayor, J., dissenting).

Chief Justice Roberts authored the majority opinion setting forth an extensive

discussion of the history regarding railroad rights of way granted pursuant to the General

Railroad Right-of-Way Act of 1875, 43 U.S.C. § 934 ("1875 Act"), which remained in effect

until enactment of the 1976 Federal Land Policy and Management Act.  Chief Justice

Roberts stated the case "requires us to define the nature of the interest granted by the

1875 Act, in order to determine what happens when a railroad abandons its right of way."

134 S.Ct. at 1262. In the Supreme Court's opinion, the history of the particular railroad at

issue was described. In part:

> In 1911, the LHP & P completed construction of its railway over the right of way, from Laramie to Coalmont, Colorado. Its proprietors had rosy expectations, proclaiming that it would become "one of the most important railroad systems in this country." Laramie, Hahns Peak and Pacific Railway System: The Direct Gateway to Southern Wyoming, Northern Colorado, and Eastern Utah 24 (1910). But the railroad ultimately fell short of that goal. Rather than shipping coal and other valuable ores as originally hoped, the LHP & P was used primarily to transport timber and cattle. R. King, Trails to Rails: A History of Wyoming's Railroads 90 (2003). Largely because of high operating costs during Wyoming winters, the LHP & P never quite achieved financial stability. It changed hands numerous times from 1914 until 1935, when it was acquired by the Union Pacific Railroad at the urging of the Interstate Commerce Commission. *Ibid.*; S. Thybony, R. Rosenberg, & E. Rosenberg, The Medicine Bows: Wyoming's Mountain Country 136–138 (1985); F. Hollenback, The Laramie Plains Line 47–49 (1960).

> In 1987, the Union Pacific sold the rail line, including the right of way, to the Wyoming and Colorado Railroad, which planned to use it as a tourist attraction. *King*, supra, at 90. That did not prove profitable either, and in 1996 the Wyoming and Colorado notified the Surface Transportation Board of its intent to abandon the right of way. The railroad tore up the tracks and ties and, after receiving Board approval, completed abandonment in 2004. In 2006 the United States initiated this action seeking a judicial declaration of abandonment and an order quieting title in the United States to the abandoned right of way. In addition to the railroad, the Government named as defendants the owners of 31 parcels of land crossed by the abandoned right of way.

> The Government settled with or obtained a default judgment against all but one of those landowners—Marvin Brandt. He contested the Government's claim and filed a counterclaim on behalf of a family trust that now owns the Fox Park parcel, and himself as trustee.[footnote omitted] Brandt asserted that the stretch of the right of way crossing his family's land was a mere easement that was extinguished upon abandonment by the railroad, so that, under common law property rules, he enjoyed full title to the land without the burden of the easement. The Government countered that it had all along retained a reversionary interest in the railroad right of way—that is, a future estate that would be restored to the United States if the railroad abandoned or forfeited its interest.

The District Court granted summary judgment to the Government and quieted title in the United States to the right of way over Brandt's land. 2008 WL 7185272 (D. Wyo., Apr. 8, 2008). [footnote omitted] The Court of Appeals affirmed. *United States v. Brandt*, 496 Fed. Appx. 822 (C.A.10 2012) (per curiam ). The court acknowledged division among lower courts regarding the nature of the Government's interest (if any) in abandoned 1875 Act rights of way. But it concluded based on Circuit precedent that the United States had retained an "implied reversionary interest" in the right of way, which then vested in the United States when the right of way was relinquished. *Id.*, at 824.

We granted certiorari. 570 U.S. ——, 134 S.Ct. 48, 186 L.Ed.2d 962 (2013).

This dispute turns on the nature of the interest the United States conveyed to the LHP & P in 1908 pursuant to the 1875 Act. Brandt contends that the right of way granted under the 1875 Act was an easement, so that when the railroad abandoned it, the underlying land (Brandt's Fox Park parcel) simply became unburdened of the easement. The Government does not dispute that easements normally work this way, but maintains that the 1875 Act granted the railroads something more than an easement, reserving an implied reversionary interest in that something more to the United States. The Government loses that argument today, in large part because it won when it argued the opposite before this Court more than 70 years ago, in the case of *Great Northern Railway Co. v. United States*, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942).

*Brandt*, 134 S.Ct. at 1263-1264.

Justice Sotomayor's dissent disagreed with the majority's decision and analysis.

Her dissent is introduced with the following statement:

The Court bases today's holding almost entirely on *Great Northern R. Co. v. United States*, 315 U.S. 262, 271, 62 S.Ct. 529, 86 L.Ed. 836 (1942), and its conclusion that the General Railroad Right–of–Way Act of 1875 granted "only an easement, and not a fee," to a railroad possessing a right of way. The Court errs, however, in two ways. First, it does not meaningfully grapple with prior *cases—Northern Pacific R. Co. v. Townsend*, 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), and *Rio Grande Western R. Co. v. Stringham*, 239 U.S. 44, 47, 36 S.Ct. 5, 60 L.Ed. 136 (1915)—that expressly concluded that the United States retained a reversionary interest in railroad rights of way. To the extent the Court regards *Great Northern* as having abrogated these precedents, it places on *Great Northern* more weight than that case will bear. Second, the Court relies on "basic common law

4

principles," ante, at 1266, without recognizing that courts have long treated railroad rights of way as sui generis property rights not governed by the ordinary common-law regime. Because *Townsend* and *Stringham* largely dictate the conclusion that the Government retained a reversionary interest when it granted the right of way at issue, and because any ambiguity in land grants "is to be resolved favorably to a sovereign grantor," *Great Northern*, 315 U.S., at 272, 62 S.Ct. 529, I respectfully dissent.

123 S.Ct. at 1269. The instant case is one where respected jurists at all levels of the federal judicial system disagreed among themselves what analysis, and what ultimate result, was dictated by the law regarding abandoned railroad rights of way. The opinion of the majority in *Marvin M. Brandt Revocable Trust v. United States*, 134 S.Ct. 1257, is now the dispositive and controlling law in this case.

Following the remand and reversal, the defendants' motion seeking attorneys' fees and expenses was brought pursuant to the EAJA, 28 U.S.C. § 2412(d). The motion asks for a total award of $146,411.21 ($119,378.24 attorneys' fees, $22,519.67 expenses, and an additional $4,513.30 attorneys' fees for the EAJA stage of the case). The request for attorneys' fees is opposed by the United States, asserting that an EAJA award is not proper if its position was substantially justified or if special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The United States argues that its position in this litigation was in fact substantially justified and therefore, EAJA attorneys' fees should not be awarded. The United States also argues the fee award that has been requested is not reasonable.

The Court agrees with the government and will deny the motion for the reasons stated below.

### Discussion

Under the American Rule, a prevailing litigant is not ordinarily entitled to collect reasonable attorneys' fees from the opposing party. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274 (1983). Except to the extent that the United States has waived its sovereign immunity, the government is immune from claims for attorneys' fees and immunity must be construed strictly in favor the sovereign and cannot be enlarged beyond what the language requires. *Id.* The EAJA is a waiver of sovereign immunity and is to be strictly construed. *Estate of Smith v. O'Halloran*, 930 F.2d 1496, 1501 (10th Cir. 1991), citing *Ruckelshaus*, 463 U.S. at 685, 103 S.Ct. at 3277; *United States v. Charles Gyurman Land & Cattle Co.*, 836 F.2d 480, 483 (10th Cir. 1987). Under the EAJA, eligible prevailing parties may recover "fees and other expenses incurred by the party" involved in litigation with the federal government. *Richlin Sec. Service Co. v Chertoff*, 553 U.S. 571, 576, 128 S.Ct. 2007, 2011 (2008). The Supreme Court instructs:

Section 2412(d)(1)(A) of Title 28 provides:

"Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

Thus, eligibility for a fee award in any civil action requires: (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement. Only the application of the "substantially justified" condition is at issue in this case.

6

*Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 158,110

S.Ct. 2361, 2318-2319 (1990).

For purposes of the EAJA, to qualify as a prevailing party, a party must receive at

least some relief on the merits of his claim before he can be said to prevail. *Buckhannon*

*Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 521 U.S. 598, 603-

604 (2001) (internal quotations, citations, and alterations omitted). See also *Shalala v.*

*Schaefer*, 509 U.S. 292, 302, 113 S.Ct. 2625 (1993), citing *Hudson, Texas State Teachers*

*Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d

866 (1989) (a prevailing party has succeeded on any significant issue in litigation and has

achieved some of the benefit sought in bringing suit).   The Tenth Circuit instructs in

*Kopunec v. Nelson*, 801 F.2d 1226, 1229 (10th Cir. 1986):

> The court looks to the substance of the litigation to determine whether an
> applicant has substantially prevailed in its position, and not merely the
> technical disposition of the case or motion. See *Austin v. Department of*
> *Commerce*, 742 F.2d 1417, 1420 (Fed. Cir. 1984) (citing *Devine v.*
> *Sutermeister*, 733 F.2d 892, 898 (Fed. Cir. 1984)).

*Id.*  The decision to award or deny attorneys' fees under the EAJA will be reversed only for

an abuse of discretion.  *Id.*

> Of necessity, the abuse of discretion standard of review "implies a degree of
> discretion invested" in the district court, not in this court, to issue a decision
> "based upon what is fair in the circumstances and guided by the rules and
> principles of law." *Valley Forge Ins. Co. v. Health Care Mgmt.*, 616 F.3d
> 1086, 1096 (10th Cir. 2010) (internal quotation and alteration omitted). Our
> appellate role is limited to ensuring that the district court's discretionary
> decision did not fall beyond "the bounds of the rationally available choices
> [before the district court] given the facts and the applicable law in the case
> at hand." *Id.* (internal quotation omitted). And, of course, it is the appellant's
> obligation to shoulder the burden of showing an error of this magnitude has
> occurred.

* * *

. . . When we review the merits of a denial of benefits, as we did in Ms. Madron's previous appeal, we review for the presence or absence of substantial evidence to support the administrative decision. See, e.g., *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007); *Madron*, 311 Fed. Appx. at 175. When a district court reviews an EAJA application, however, it considers (among other things) whether the government's litigating position enjoyed substantial justification in fact and law; that is, whether its litigating position was reasonable even if wrong. See *Gatson v. Bowen*, 854 F.2d 379, 380 (10th Cir. 1988). "The government's position can be [substantially] justified," we have repeatedly held, "even though it is not correct." *Hackett*, 475 F.3d at 1172 (internal quotation marks omitted). The test for substantial justification under the EAJA, the Supreme Court has added, is simply "one of reasonableness." *Pierce v. Underwood*, 487 U.S. 552, 563–64, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In other words, it does not necessarily follow from our decision vacating an administrative decision that the government's efforts to defend that decision lacked substantial justification. Ms. Madron's suggestion otherwise is simply erroneous.

*Madron v. Astrue*, 646 F.3d 1255,  1257-1258 (10th Cir. 2011).

There is little question that the Brandts are prevailing parties having suceeded on significant issues in the litigation.  Clearly, this finding is embraced in the Supreme Court's decision reversing and remanding the matter for further proceedings.  There is no need to address the prevailing party issue any further in this Order.

The government's argument is that its position was substantially justified is persuasive, and thus, precludes the requested award of EAJA fees. It is the burden of the United States to demonstrate that its position was substantially justified.

The burden rests with the government to prove that it was substantially justified in arguing, in this case, that the ALJ's decision was supported by substantial evidence. *Wyoming Wildlife Federation v. United States,* 792 F.2d 981, 985 (10th Cir. 1986) ("Once it has been established that plaintiffs are prevailing parties, the burden shifts to the Government to prove that it was substantially justified in asserting its litigating position."); *Fulton v. Heckler*, 784 F.2d 348, 349 (10th Cir. 1986) ("The issue is whether the Government was [substantially justified] in arguing that the ALJ's decision was supported by substantial evidence.").

The standard under which substantial justification is scrutinized, articulated in EAJA's legislative history and uniformly cited by most courts addressing the issue (including this court), is that of "reasonableness in both law and fact." See *Wyoming Wildlife Federation*, 792 F.2d at 985; *Fulton*, 784 F.2d at 349; *United States v. Community Bank & Trust Co.*, 768 F.2d 311, 314 (10th Cir. 1985); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1486 (10th Cir. 1984); see also H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, reprinted in 1980 U.S.Code Cong. & Ad. News 4953, 4984, 4989–90. Neither this court nor any other court has applied a more stringent standard under which fees would be denied unless the government's position at least bordered on the frivolous or showed bad motivation or intransigence. The court in *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission*, 672 F.2d 426, 430 (5th Cir. 1982), asserted that the government need show more than that its suit was not frivolous and, moreover, particularly when a party has had to engage in lengthy administrative proceedings before a final vindication of his or her rights in the courts, the government should have to make a "strong showing" of substantial justification. In fact, the more stringent standard of "arbitrary, frivolous, unreasonable or groundless" proposed by the Department of Justice was explicitly rejected as too burdensome a standard for prevailing plaintiffs to meet. See H.R.Rep. No. 1418, supra, at 14, reprinted in 1980 U.S.Code Cong. & Ad.News at 4993. Even the government's response opposing the fee award concedes that the substantial justification standard is one of reasonableness. ...

*Weakley v. Bowen*, 803 F.2d 575, 577-578 (10th Cir. 1986). The Court examines the government's overall position prior to and during the litigation to determine whether it had a reasonable basis in both law and fact, and does not examine the government's stance on each individual issue addressed in the case. *BCPeabody Construction Services, Inc. v. United States*, 117 Fed. Cl. 408, 413 (2014). The government's position can be justified so as to preclude an award of attorneys' fees to a prevailing party even though it is incorrect. *Id.*, citing *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001). See also *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550 (1988) ("We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high

degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. [citations omitted] To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.").

There can be no disagreement that the United States was not the "prevailing party." However, for EAJA fee application purposes, the government's position was substantially justified. Extensive discussion of the litigation is not required to support this conclusion. The issues raised by the government had a reasonable basis in law or fact. The underlying facts were not meaningfully in dispute.  What was in dispute was what was legally significant in deciding the government's quiet title claim, as reflected in the law that existed at the time the case was brought, and as considered at all subsequent stages of the litigation.  Throughout the litigation the government's position was consistent with then existing and controlling circuit precedent. The District Court's decision granting summary judgment in favor of the government lends support to this notion.  The Tenth Circuit affirmed the District Court's judgment, stating that the arguments were foreclosed by circuit precedent and that it was unpersuaded by the trust's other arguments and efforts to distinguish and limit obvious contrary precedent.  This again supports a finding that the government's position in the litigation was substantially justified.  In the Supreme Court, Brandts sought review, asserting that the Tenth Circuit's ruling that the United States retained an implied reversionary interest in 1875 Act rights of way conflicts with decisions

10

from the Federal and Seventh Circuits.  See *Petition for Writ of Certiorari*, 2014 WL 1225990, *25.  Recognizing the circuit split, certiorari was granted.

In the reply to the government's opposition, Brandts have now asserted that the Supreme Court's disagreement with the government's argument, were a "rebuke."  Doc. 227, 3.  Obviously, the Supreme Court was not persuaded by the government's legal analysis, which necessarily and by implication leads to the conclusion that the decisions of the District Court and Tenth Circuit were equally deficient.  This, however, does not lead ineluctably to a finding here, for EAJA application purposes, that the government's position was not substantially justified.  The government's position need not be correct; it need not correspond to the ultimate decisions by courts upon review to be substantially justified.  Where there is room for debate, even if wrong, the government's position is substantially justified.

The parties' arguments were reviewed and considered at length early in the litigation and throughout all of the proceedings in this District Court, in the Tenth Circuit Court of Appeals, and finally, the United States Supreme Court which reached a conclusion contrary to all of the court's reviewing the case before it reviewed the case.  Given the history of this litigation, nothing in the record persuades this Court it should conclude that the position of the United States was not substantially justified.  As instructed by the governing rules guiding the court's consideration of EAJA applications for fee awards, the EAJA must be strictly construed and the waiver of sovereign immunity cannot be enlarged beyond what the language of the EAJA itself provides.  Where the court finds that the United States has shown its position was substantially justified, as this District Court does now, the motion asking for an award of EAJA fees in this hard-fought case must be denied,

11

even if the Supreme Court's decision reversed the lower courts and remanded for further proceedings in accordance with its opinion.   The Court finds and concludes that the government's position was substantially justified.  The motion for an EAJA fee award to the defendants in this case will be denied.

Given this Court's determination that the government's position was substantially justified, the Court declines the invitation to consider whether defendants' requested fees are reasonable.  Accordingly, it is hereby

**ORDERED** that "The Brandts' Application for Attorneys' Fees and Expenses Under the Equal Access to Justice Act" (Doc. 224) shall be, and is, **DENIED.**

Dated this _27th_ day of _September_ 2016.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE